UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:
THE ULTIMATE LIVING GROUP, LLC
          Debtor.

Case No. 04-12990/MFW

## TRUSTEE'S FINAL REPORT AND ACCOUNT OF THE ADMINISTRATION OF THE ESTATE AND FINAL APPLICATION FOR COMPENSATION

The petition commencing this case was initially filed under Chapter 11 on October 18, 2004, converted to a case under Chapter 7 on May 31, 2005 and the undersigned (the "Trustee") was appointed or elected trustee on May 31, 2005.  Trustee has qualified as trustee for the bankruptcy estate in this case (the "Estate") pursuant to Section 322 of the Bankruptcy Code.

The Trustee certifies that the money of the Estate is deposited with the following:

| Bank Name | Account Number | Accountant Balance |
|---|---|---|
| JPMORGAN CHASE BANK, N.A. | ********2465 | $ 43,263.99 |

All property of the Estate has been inventoried, collected, and liquidated, or exempted; all adversary proceedings are closed.  The Trustee will forthwith propose the distribution of the money of the Estate to creditors and the abandonment of all remaining unliquidated property of the Estate. (See Exhibit A - Individual Estate Property Record and Report).

All claims have been reviewed and properly dealt with.  In this regard, all proofs of claim have been examined and any objections thereto have been filed with the Court.  The bar date has expired for creditors to file claims.  (See Exhibit C - Copy Claims Register.)

Receipts:

Gross Estate Proceeds:
(See Exhibit B – Cash)
Receipts and Disbursements
Record and Bankruptcy Rule
6004 Report(s) of Sale)                             $          53,344.69

Disbursements:
(See Exhibit B – Cash)
Receipts and Disbursements
Record and Bankruptcy Rule
6004 Report(s) of Sale)                             $          10,080.70

Balance
Net Estate Proceeds                             $          43,263.99

CERTIFICATION

I, Alfred T. Giuliano, Chapter 7 Trustee, the undersigned trustee, hereby certify, under penalty of perjury, that:

(i)     the above Final Report and Account and the attached Application for Compensation are true and correct;

(ii)     no agreement or understanding exists between the undersigned and any other person for a division of compensation except members of my firm.

(iii)     the undersigned has not entered into any agreement, express or implied, with another party in interest in the above captioned proceeding for the purpose of fixing fees or other compensation to be paid to the undersigned for services rendered in connection therewith, from the assets of the estate in excess of the compensation allowed by law.

Dated: ___5/10/08___

_____
Alfred T. Giuliano, Chapter 7 Trustee, Trustee

Trustee Name:     Alfred T. Giuliano, Chapter 7 Trustee

Trustee Address:     750 Route 73 South
Suite 110
Marlton, NJ  08053

Trustee Phone No.: (856) 596-7000

# 77

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

In re:                                          :        Chapter 11
                                                :
THE ULTIMATE LIVING GROUP, LLC,                 :
                                                :
                                                :        Bankruptcy No. 04-12990-(MFW)
                        Debtor                   :
_____ :

### ORDER

The United States Trustee's Motion to Convert Chapter 11 Case to Chapter 7 or to

Appoint a Chapter 11 Trustee came on for hearing, due notice of the time and place of the

hearing having been properly given.  Appearances were as noted on the record.  For the reasons

set forth on the record,

    IT IS HEREBY ORDERED that:

    This case be and hereby is converted to a chapter 7 case.

DATE: 5|27|05

                    THE HONORABLE MARY F. WALRATH
                    CHIEF JUDGE
                    UNITED STATES BANKRUPTCY COURT

#78

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN THE MATTER OF                :    CHAPTER 7
                                :
ULTIMATE LIVING GROUP, LLC      :    04-12990 (MFW)
                                :
         Debtor.                :

NOTICE TO INTERIM TRUSTEE/ TRUSTEE OF SELECTION IN AN ASSET CASE

TO:   **Alfred T. Giuliano**

         You are hereby notified of your appointment in an asset case as Interim Trustee/Trustee of
the estate of the above named debtor. The amount of your bond has been fixed by the United States
Trustee. You are required to notify FREDERIC J. BAKER, SENIOR ASSISTANT UNITED
STATES TRUSTEE, at J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Wilmington,
DE 19801 in writing within (5) days after receipt of this notice only if you reject this case.

                         KELLY BEAUDIN STAPLETON
                         UNITED STATES TRUSTEE
                         FREDERIC J. BAKER
                         SENIOR ASSISTANT UNITED STATES TRUSTEE

DATED:     May 31, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

#3

In re:                              :
                                    : Chapter 7
THE ULTIMATE LIVING GROUP,          :
LLC,                                : Civil Action No. 07-161-JJF
                                    :
          Debtor.                   :

### ORDER

WHEREAS, on April 5, 2007, the Trustee filed a Motion To
Waive The Requirement Of Examination Of Debtor (D.I. 2)
requesting that the Court relieve the Trustee of the duty to
orally examine the Debtor prior to the conclusion of a meeting of
creditors pursuant to Section 341(a) of the Bankruptcy Code
because the Debtor has repeatedly failed to attend several prior
scheduled meetings and in light of the Trustee's pending closure
of the administration of the Debtor's estate;

WHEREAS, the Debtor filed no response to the Motion;

NOW THEREFORE, IT IS HEREBY ORDERED that the Trustee's
Motion To Waive The Requirement Of Examination Of Debtor (D.I. 2)
is **GRANTED** and the meeting of creditors pursuant to 11 U.S.C. §
341 is deemed concluded.

April 23, 2007

UNITED STATES DISTRICT JUDGE

#102

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| WORLDSPAN, L.P., | ) |
| Plaintiff, | ) Civil Action No. 03-1081-JJF |
| vs. | ) |
| THE ULTIMATE LIVING GROUP, LLC, | ) |
| and | ) |
| JOHN RANDALL LASSITER, III, | ) |
| Defendants. | ) |

| | |
|---|---|
| In re: | ) Chapter 7 |
| THE ULTIMATE LIVING GROUP, LLC, | ) Bkr. No. 04-12990  (MFW) |
| Debtor | ) |

## ORDER

For the reasons stated on the record at the hearing on November 29, 2006,

IT IS ORDERED that the reference of the above-captioned Bankruptcy Case No. 04-12990 to the bankruptcy court for this district is hereby withdrawn in its entirety pursuant to 11 U.S.C. § 157(d); and

IT IS FURTHER ORDERED that John Randall Lassiter, III shall appear and testify before this Court at a hearing to be held on February __7__, 2007, at _9:00_ am, or at such other time as may be ordered by the Court; and

1

IT IS FURTHER ORDERED that John Randall Lassiter, III shall appear for and submit to an examination at a meeting of creditors to be held in this district at a time convenient to the United States Trustee, the Chapter 7 Trustee, and any creditors and counsel desiring to attend, said meeting to take place no later than 5 days prior to the foregoing hearing unless otherwise ordered by the Court; and

IT IS FURTHER ORDERED that John Randall Lassiter, III shall appear for deposition pursuant to Fed. R. Civ. P. 30 at a time and place convenient to counsel but no later than 5 days prior to the foregoing hearing unless otherwise ordered by the Court; and

IT IS FURTHER ORDERED that Ultimate Living Group, LLC and ULG Worldwide, Inc. shall each designate a person or persons to appear for deposition pursuant to Fed. R. Civ. P. 30(b)(6) on matters concerning the formation, management, operations, and finances of the company, said deposition(s) to be held at a time and place convenient to counsel but no later than 5 days prior to the foregoing hearing unless otherwise ordered by the Court; and

IT IS FURTHER ORDERED that John Randall Lassiter, III shall, no later 15 days prior to the foregoing hearing, deliver to the Chapter 7 Trustee and to Worldspan, L.P.'s counsel true and complete copies of the following:

1. All certificates of formation, limited liability company agreements, management and membership agreements, and minutes of meetings of The Ultimate Living Group, LLC;

2. For the period January 1, 2002 to the present, all tax returns, including all schedules and attachments, filed by or on behalf of The Ultimate Living Group, LLC;

3. For the period January 1, 2002 to the present, all statements for every account (whether checking, savings, money market, certificate of deposit, stock, bond, annuity, mutual fund, or other deposit, investment, or

2

brokerage account) on which The Ultimate Living Group, LLC's name appears or which is held in another's name on The Ultimate Living Group, LLC's behalf, regardless of whether or not the account is presently open;

4.  For the period January 1, 2002 to the present, all books of account, accounts receivable, accounts payable, schedules of receipts and disbursements, balance sheets, ledgers, and financial statements of The Ultimate Living Group, LLC;

5.  All certificates of incorporation, stock certificates, by-laws, resolutions, and minutes of meetings of ULG Worldwide, Inc.

6.  For the period January 1, 2002 to the present, all tax returns, including all schedules and attachments, filed by or on behalf of ULG Worldwide, Inc.;

7.  For the period January 1, 2002 to the present, all statements for every account (whether checking, savings, money market, certificate of deposit, stock, bond, annuity, mutual fund, or other deposit, investment, or brokerage account) on which ULG Worldwide, Inc.'s name appears or which is held in another's name on ULG Worldwide, Inc's behalf, regardless of whether or not the account is presently open;

8.  For the period January 1, 2002 to the present, all books of account, accounts receivable, accounts payable, schedules of receipts and disbursements, balance sheets, ledgers, and financial statements of ULG Worldwide, Inc.;

9.  For the period January 1, 2002 to the present, all tax returns, including all schedules and attachments, filed by or on behalf of John Randall Lassiter, III;

10. For the period January 1, 2002 to the present, all statements for every account (whether checking, savings, money market, certificate of deposit, stock, bond, annuity, mutual fund, or other deposit, investment, or brokerage account) on which John Randall Lassiter, III's name appears or which is held in another's name on his behalf, regardless of whether or not the account is presently open;

11. All stock certificates and bonds held by John Randall Lassiter, III individually, by him jointly with another, by him as trustee or guardian, or by another on his behalf;

3

12.  For the period January 1, 2002, all statements for any profit sharing, retirement, deferred compensation, or pension plan, or other similar account in which John Randall Lassiter, III is a participant.

SO ORDERED this ⎽⎽11⎽⎽ day of December 2006.

UNITED STATES DISTRICT JUDGE

4

# EXHIBIT A

## Form 1
## Individual Estate Property Record and Report
### Asset Cases

**Case Number:** 04-12990 MFW
**Case Name:** ULTIMATE LIVING GROUP LLC

**Period Ending:** 05/09/08

**Trustee:** (500530)    Alfred T. Giuliano, Chapter 7 Trustee
**Filed (f) or Converted (c):** 05/31/05 (c)
**§341(a) Meeting Date:** 07/19/05
**Claims Bar Date:** 10/17/05

| Ref. # | 1 Asset Description (Scheduled And Unscheduled (u) Property) | 2 Petition/ Unscheduled Values | 3 Estimated Net Value (Value Determined By Trustee, Less Liens, Exemptions, and Other Costs) | 4 Property Abandoned OA=§554(a) abandon. DA=§554(c) abandon. | 5 Sale/Funds Received by the Estate | 6 Asset Fully Administered (FA)/ Gross Value of Remaining Assets |
|---|---|---|---|---|---|---|
| 1 | Bank Accounts - PNC Bank, N.A. #56-0480-8599 | 54,730.18 | 22,197.49 | | 22,197.49 | FA |
| 2 | Bank Accounts - PNC Bank, N.A. #56-0546-8792 | 38,464.70 | 0.00 | DA | 0.00 | FA |
| 3 | Security Deposits - Nice, France Office Lease | 4,200.00 | 0.00 | DA | 0.00 | FA |
| 4 | Accounts Receivable | 52,703.00 | 0.00 | DA | 0.00 | FA |
| 5 | Office Equipment, Furnishings, and Supplies Computers, Website, Customer Lists, Technology, Workstations Trustee had a converstaion early on with debtor's principal who indicated that the furniture was in France and was used with little value. Due to logistics, trustee determined that asset would probably not yield enough proceeds to warrant trying to sell used office furniture in France while dealing with an uncooperative debtor. | 50,000.00 | 0.00 | DA | 0.00 | FA |
| 6 | Retainer-u Flaster/Greenberg P.C. (u) Pursuant to Court Order Case No. : 07-cv-00161 Docket No.: 17 | 15,000.00 | 15,000.00 | | 30,000.00 | FA |
| Int | INTEREST (u) | Unknown | N/A | | 1,147.20 | Unknown |
| 7 | **Assets    Totals (Excluding unknown values)** | **$215,097.88** | **$37,197.49** | | **$53,344.69** | **$0.00** |

**Major Activities Affecting Case Closing:**

Printed: 05/09/2008 03:30 PM    V.10.03

# Form 1

## Individual Estate Property Record and Report
## Asset Cases

Page: 2

**Case Number:** 04-12990 MFW
**Case Name:** ULTIMATE LIVING GROUP LLC

**Period Ending:** 05/09/08

**Trustee:** (500530)    Alfred T. Giuliano, Chapter 7 Trustee
**Filed (f) or Converted (c):** 05/31/05 (c)
**§341(a) Meeting Date:** 07/19/05
**Claims Bar Date:** 10/17/05

| 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|
| Asset Description (Scheduled And Unscheduled (u) Property) | Petition/ Unscheduled Values | Estimated Net Value (Value Determined By Trustee, Less Liens, Exemptions, and Other Costs) | Property Abandoned OA=§554(a) abandon. DA=§554(c) abandon. | Sale/Funds Received by the Estate | Asset Fully Administered (FA)/ Gross Value of Remaining Assets |
| Ref. # | | | | | |

Initial Projected Date Of Final Report (TFR):    July 15, 2008

Current Projected Date Of Final Report (TFR):    May 9, 2008   (Actual)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

# 17

| | |
|---|---|
| In re: | Chapter 7 |
| THE ULTIMATE LIVING GROUP, LLC, | Case No. 07-cv-00161-JJF |
| Debtor. | |

## ORDER APPROVING FIRST AND FINAL FEE APPLICATION
## OF FLASTER/GREENBERG P.C.

Upon the First and Final Fee Application of Flaster/Greenberg, P.C., Counsel to The

Ultimate Living Group, for Compensation and Reimbursement of Expenses for the First and

Final Period of October 18, 2004 through May 31, 2005 (the "Application"); the Court having

reviewed the Application and the Court having determined that the legal and factual basis set

forth in the Application establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1. The Application is GRANTED.

2. Flaster/Greenberg is hereby authorized and directed to apply $15,000 $10,000 of the

Retainer in full satisfaction of this Application.

3. The fees requested are hereby APPROVED and such approval shall become final

at the time that this Court approves the Trustee's Final Accounting in this case.

4. FG shall promptly return the remaining $15,000 of the Retainer to the Trustee.

Dated: January 3, 2008

Honorable Joseph J. Farnan, Jr.
United States District Court Judge

# EXHIBIT B

Page: 1

# Form 2

## Cash Receipts And Disbursements Record

| Case Number: | 04-12990 MFW | Trustee: | Alfred T. Giuliano, Chapter 7 Trustee (500530) |
| Case Name: | ULTIMATE LIVING GROUP LLC | Bank Name: | JPMORGAN CHASE BANK, N.A. |
| | | Account: | ***-*****24-65 - Money Market Account |
| Taxpayer ID #: | 38-1874892 | Blanket Bond: | $5,000,000.00 (per case limit) |
| Period Ending: | 05/09/08 | Separate Bond: | N/A |

| 1<br>Trans.<br>Date | 2<br>{Ref #}/<br>Check # | 3<br>Paid To / Received From | 4<br>Description of Transaction | T-Code | 5<br>Receipts<br>$ | 6<br>Disbursements<br>$ | 7<br>Money Market<br>Account Balance |
|---|---|---|---|---|---|---|---|
| 08/10/05 | {1} | PNC Bank | Closed bank account/Demand Letter | 1129-000 | 22,197.49 | | 22,197.49 |
| 08/24/05 | | To Account #*******2466 | Transfer funds to make payment to PNC Bank | 9999-000 | | 27.50 | 22,169.99 |
| 08/31/05 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 0.4500% | 1270-000 | 5.47 | | 22,175.46 |
| 09/30/05 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 0.5000% | 1270-000 | 8.72 | | 22,184.18 |
| 10/31/05 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 0.5500% | 1270-000 | 9.64 | | 22,193.82 |
| 11/30/05 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 0.5500% | 1270-000 | 10.03 | | 22,203.85 |
| 12/30/05 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 0.6500% | 1270-000 | 11.10 | | 22,214.95 |
| 01/09/06 | 1001 | International Sureties, Ltd. | BOND PREMIUM PAYMENT ON LEDGER BALANCE AS OF 01/09/2006 FOR CASE #04-12990, Bond No.: 0106026389 | 2300-000 | | 15.33 | 22,199.62 |
| 01/31/06 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 2.1500% | 1270-000 | 30.54 | | 22,230.16 |
| 02/28/06 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 2.1500% | 1270-000 | 36.69 | | 22,266.85 |
| 03/31/06 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 2.1500% | 1270-000 | 40.70 | | 22,307.55 |
| 04/28/06 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 2.1500% | 1270-000 | 39.45 | | 22,347.00 |
| 05/31/06 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 2.1500% | 1270-000 | 40.84 | | 22,387.84 |
| 06/30/06 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 2.1500% | 1270-000 | 39.60 | | 22,427.44 |
| 07/31/06 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 2.1500% | 1270-000 | 40.99 | | 22,468.43 |
| 08/31/06 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 2.1500% | 1270-000 | 41.06 | | 22,509.49 |
| 09/29/06 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 2.1500% | 1270-000 | 38.45 | | 22,547.94 |
| 10/31/06 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 2.1500% | 1270-000 | 42.49 | | 22,590.43 |
| 11/30/06 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 2.1500% | 1270-000 | 39.91 | | 22,630.34 |
| 12/29/06 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 2.1500% | 1270-000 | 38.65 | | 22,668.99 |
| 01/02/07 | 1002 | International Sureties, Ltd. | BOND PREMIUM PAYMENT ON LEDGER BALANCE AS OF 01/02/2007 FOR CASE #04-12990 | 2300-000 | | 18.75 | 22,650.24 |
| | | | Subtotals : | | $22,711.82 | $61.58 | |

{} Asset reference(s)

Printed: 05/09/2008 03:30 PM    V.10.03

# Form 2

## Cash Receipts And Disbursements Record

| Case Number: | 04-12990 MFW | | Trustee: | Alfred T. Giuliano, Chapter 7 Trustee (500530) |
| Case Name: | ULTIMATE LIVING GROUP LLC | | Bank Name: | JPMORGAN CHASE BANK, N.A. |
| | | | Account: | *** -*****24-65 - Money Market Account |
| Taxpayer ID #: | 38-1874892 | | Blanket Bond: | $5,000,000.00 (per case limit) |
| Period Ending: | 05/09/08 | | Separate Bond: | N/A |

| 1<br>Trans.<br>Date | 2<br>{Ref #} /<br>Check # | 3<br>Paid To / Received From | 4<br>Description of Transaction | T-Code | 5<br>Receipts<br>$ | 6<br>Disbursements<br>$ | 7<br>Money Market<br>Account Balance |
|---|---|---|---|---|---|---|---|
| 01/31/07 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 2.0300% | 1270-000 | 43.00 | | 22,693.24 |
| 02/28/07 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 2.0300% | 1270-000 | 35.33 | | 22,728.57 |
| 03/30/07 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 2.0800% | 1270-000 | 38.04 | | 22,766.61 |
| 04/30/07 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 2.0800% | 1270-000 | 40.21 | | 22,806.82 |
| 05/31/07 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 2.0800% | 1270-000 | 40.28 | | 22,847.10 |
| 06/29/07 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 2.0800% | 1270-000 | 37.75 | | 22,884.85 |
| 07/31/07 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 2.0800% | 1270-000 | 41.72 | | 22,926.57 |
| 08/31/07 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 2.0800% | 1270-000 | 40.49 | | 22,967.06 |
| 09/28/07 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 2.0800% | 1270-000 | 36.64 | | 23,003.70 |
| 10/31/07 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 2.0800% | 1270-000 | 43.25 | | 23,046.95 |
| 11/30/07 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 1.7800% | 1270-000 | 36.74 | | 23,083.69 |
| 12/31/07 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 1.7800% | 1270-000 | 34.89 | | 23,118.58 |
| 01/18/08 | | Flaster Greenberg PC | Refund balance of retainer received for representation in Chapter 11 Pursuant to Court Order [Docket No.: 17 District Court Case No.: 07-cv-00161-JJF] | | 20,000.00 | | 43,118.58 |
| | {6} | | Return of retainer received for representation in Chapter 11 | 1229-000 | 30,000.00 | | 43,118.58 |
| | | Flaster/Greenberg P.C. | Fee application for expenses for period October 18, 2004 to May 31, 2005 in Chapter 11 | 6710-000 | -1,968.18 | | 43,118.58 |
| | | Flaster/Greenberg P.C. | Fee application for services rendered for | 6700-000 | -8,031.82 | | 43,118.58 |
| | | | **Subtotals :** | | **$20,468.34** | **$0.00** | |

{} Asset reference(s)

Page: 3

# Form 2
## Cash Receipts And Disbursements Record

| Case Number: | 04-12990 MFW | Trustee: | Alfred T. Giuliano, Chapter 7 Trustee (500530) |
| Case Name: | ULTIMATE LIVING GROUP LLC | Bank Name: | JPMORGAN CHASE BANK, N.A. |
| | | Account: | ***-*****24-65 - Money Market Account |
| Taxpayer ID #: | 38-1874892 | Blanket Bond: | $5,000,000.00  (per case limit) |
| Period Ending: | 05/09/08 | Separate Bond: | N/A |

| 1 Trans. Date | 2 {Ref #} / Check # | 3 Paid To / Received From | 4 Description of Transaction | T-Code | 5 Receipts $ | 6 Disbursements $ | 7 Money Market Account Balance |
|---|---|---|---|---|---|---|---|
| | | | period October 18, 2004 to May 31, 2005 in Chapter 11 | | | | |
| 01/24/08 | 1003 | International Sureties, Ltd. | BOND PREMIUM PAYMENT ON BANK BALANCE AS OF 01/01/2008 FOR CASE #04-12990, Chapter 7 Blanket Bond Delaware | 2300-000 | | 19.12 | 43,099.46 |
| 01/31/08 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 1.1000% | 1270-000 | 38.99 | | 43,138.45 |
| 02/29/08 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 0.9400% | 1270-000 | 33.16 | | 43,171.61 |
| 03/31/08 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 0.7500% | 1270-000 | 30.12 | | 43,201.73 |
| 04/28/08 | Int | JPMORGAN CHASE BANK, N.A. | Interest Earned | 1270-000 | 35.45 | | 43,237.18 |
| 04/30/08 | Int | JPMORGAN CHASE BANK, N.A. | Interest posting at 0.9500% | 1270-000 | 26.81 | | 43,263.99 |
| | | | **ACCOUNT TOTALS** | | 43,344.69 | 80.70 | $43,263.99 |
| | | | Less: Bank Transfers | | 0.00 | 27.50 | |
| | | | **Subtotal** | | 43,344.69 | 53.20 | |
| | | | Less: Payments to Debtors | | | 0.00 | |
| | | | **NET Receipts / Disbursements** | | **$43,344.69** | **$53.20** | |

{} Asset reference(s)

Printed: 05/09/2008 03:30 PM    V.10.03

Page: 4

# Form 2
## Cash Receipts And Disbursements Record

| Case Number: | 04-12990 MFW | | Trustee: | Alfred T. Giuliano, Chapter 7 Trustee (500530) |
| Case Name: | ULTIMATE LIVING GROUP LLC | | Bank Name: | JPMORGAN CHASE BANK, N.A. |
| | | | Account: | ***-*****24-66 - Checking Account |
| Taxpayer ID #: | 38-1874892 | | Blanket Bond: | $5,000,000.00  (per case limit) |
| Period Ending: | 05/09/08 | | Separate Bond: | N/A |

| 1 | 2 | 3 | 4 | | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|
| Trans. Date | {Ref #} / Check # | Paid To / Received From | Description of Transaction | T-Code | Receipts $ | Disbursements $ | Checking Account Balance |
| 08/24/05 | | From Account #*******2465 | Transfer funds to make payment to PNC Bank | 9999-000 | 27.50 | | 27.50 |
| 08/24/05 | 101 | PNC Records Services | For research and cost of copies/Bank File: 20085-3271 | 2420-000 | | 27.50 | 0.00 |

|  |  | | | | | |
|---|---|---|---|---|---|---|
| | ACCOUNT TOTALS | | | 27.50 | 27.50 | $0.00 |
| | Less: Bank Transfers | | | 27.50 | 0.00 | |
| | **Subtotal** | | | 0.00 | 27.50 | |
| | Less: Payments to Debtors | | | | 0.00 | |
| | **NET Receipts / Disbursements** | | | $0.00 | $27.50 | |

| TOTAL - ALL ACCOUNTS | | Net Receipts $ | Net Disbursements | Account Balances |
|---|---|---|---|---|
| MMA # ***-*****24-65 | | 43,344.69 | 53.20 | 43,263.99 |
| Checking # ***-*****24-66 | | 0.00 | 27.50 | 0.00 |
| | | $43,344.69 | $80.70 | $43,263.99 |

| Net Receipts : | 43,344.69 |
|---|---|
| Plus Gross Adjustments : | 10,000.00 |
| Net Estate : | $53,344.69 |

{} Asset reference(s)

**EXHIBIT C**

CERTIFIED: 04/23/08
AS A TRUE COPY:
ATTEST:

DAVID D. BIRD, CLERK
U.S. BANKRUPTCY COURT

BY: *Diana Plunkett*

# District of Delaware
# Claims Register

## 04-12990-MFW The Ultimate Living Group, LLC CASE CLOSED on 05/02/2007
## CASE CONVERTED on 05/31/2005

**Judge:** Mary F. Walrath
**Office:** Delaware
**Trustee:** Alfred Thomas Giuliano

**Chapter:** 7
**Last Date to file claims:**
**Last Date to file (Govt):**

| | | |
|---|---|---|
| *Creditor:* (1501208)<br>Department of the Treasury<br>Internal Revenue Service<br>409 Silverside Road<br>Stop Insolvency<br>Wilmington, DE 19809 | **Claim No: 1**<br>*Filed:* 03/23/2005<br>*Entered:* 04/07/2005 | *Status:*<br>*Filed by:* CR<br>*Entered by:* MJY<br>*Modified:* |

| Priority claimed: $15500.00 |
|---|
| **Total** **claimed: $15500.00** |

*History:*

  1-1   03/23/2005 Claim #1 filed by Department of the Treasury , total amount claimed: $15500 (MJY)

*Description:*

*Remarks:*

| | | |
|---|---|---|
| *Creditor:* (1712485)<br>OZ Communications, Inc.<br>c/o Inez H. Friedman-Boyce, Esq.<br>Goodwin Proctor LLP<br>53 State Street<br>Boston, MA 02109 | **Claim No: 2**<br>*Filed:* 10/07/2005<br>*Entered:* 10/19/2005 | *Status:*<br>*Filed by:* CR<br>*Entered by:* MJY<br>*Modified:* |

| Priority claimed: $62278.28 |
|---|
| **Total** **claimed: $62278.28** |

*History:*

  2-1   10/07/2005 Claim #2 filed by OZ Communications, Inc. , total amount claimed: $62278.28 (MJY)

*Description:*

*Remarks:*

| | | |
|---|---|---|
| *Creditor:* (1713218)<br>Wordspan I.P. | **Claim No: 3**<br>*Filed:* 10/17/2005 | *Status:*<br>*Filed by:* CR |

| c/o Michael B. McCauley<br>Palmer Biezup & Henderson, LLP<br>1223 Foulk Road<br>Wilmington, DE 19803- 2723 | *Entered:* 10/21/2005 | *Entered by:* JRK<br>*Modified:* |
|---|---|---|

| | |
|---|---|
| Unsecured claimed:  $170040.00 | |
| **Total**      **claimed: $170040.00** | |

*History:*

<u>3-1</u>      10/17/2005 Claim #3 filed by Wordspan I.P. , total amount claimed: $170040 (JRK)

*Description:*

*Remarks:*

# Claims Register Summary

**Case Name:** The Ultimate Living Group, LLC
**Case Number:** 04-12990-MFW
**Chapter:** 7
**Date Filed:** 10/18/2004
**Total Number Of Claims:** 3

| | Total Amount Claimed | Total Amount Allowed |
|---|---|---|
| **Unsecured** | $170040.00 | |
| **Secured** | | |
| **Priority** | $77778.28 | |
| **Unknown** | | |
| **Administrative** | | |
| **Total** | **$247818.28** | **$0.00** |

4/24/2008 10:05 AM

B10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT DISTRICT OF DELAWARE<br>Request for Administrative Expense | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>The Ultimate Living Group, LLC | Case Number:<br>04-12990-MWF |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>OZ Communications, Inc. | ☒ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>OZ Communications, Inc.<br>c/o Inez H. Friedman-Boyce, Esq.<br>Goodwin Procter LLP<br>53 State Street<br>Boston, MA 02109<br>Telephone number: (617) 570-1000 | Court Claim Number: __2__<br>*(If known)*<br><br>Filed on: __October 7, 2005__ |
| Name and address where payment should be sent (if different from above):<br><br><br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| 1. Amount of Claim as of Date Case Filed:    $ 32,332.57 Administrative<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.    $29,945.71 Unsecured<br><br>If all or part of your claim is entitled to priority, complete item 5.    $62,278.28 Total<br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.<br><br>Specify the priority of the claim. |
| 2. Basis for Claim: __Return of Deposit__<br>(See instruction #2 on reverse side.) | ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| 3. Last four digits of any number by which creditor identifies debtor: _____<br><br>3a. Debtor may have scheduled account as: _____<br>(See instruction #3a on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4). |
| 4. Secured Claim (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Other<br>Describe:<br><br>Value of Property: $_____ Annual Interest Rate____%<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>if any: $_____ Basis for perfection: _____<br><br>Amount of Secured Claim: $_____ Amount Unsecured: $_____ | ☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).<br><br>☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__). |
| 6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | Amount entitled to priority:<br><br>$_____ |
| 7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*<br><br>See Proof of Claim Number 2<br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>Attached as Exhibit A<br>If the documents are not available, please explain: | *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |
| Date:<br><br>4-30-2008 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | FOR COURT USE ONLY |

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

Exhibit A

**GOODWIN ┃ PROCTER**

Erik A. Collins
617.570.8271
ecollins@
goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

October 6, 2005

**By Federal Express**

Clerk of the Bankruptcy Court
United States Bankruptcy Court, District of Delaware
824 Market Street, 3rd Floor
Wilmington, DE 19801

Re:     <u>The Ultimate Living Group, LLC Case No. 04-12990</u>

Dear Sir or Madame:

Enclosed for filing in the above-referenced case please find an original and two copies of the Proof of Claim of OZ Communications, Inc.

To acknowledge receipt of the Proof of Claim please date stamp one of the enclosed copies and return it to me in the envelope provided.

Please contact me should you have any questions or concerns.  Thank you.

Very truly yours,

*Erik A. Collins* LMH

Erik A. Collins

EAC:lmh
cc:     Inez H. Friedman Boyce, Esq.
        Gina Lynn Martin, Esq.
        Ms. Cynthia Vitello

LIBC/2612514.1

FORM B10 (Official Form 10) (4/01)

| United States Bankruptcy Court – District of Delaware | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br>The Ultimate Living Group, LLC | Case Number<br>04-12990-MWF | |
|---|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>OZ Communications, Inc. | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | |
|---|---|---|
| Name and address where notices should be sent:<br>OZ Communications, Inc<br>c/o Inez H. Friedman-Boyce, Esq.<br>Goodwin Procter LLP<br>53 State Street<br>Boston, MA  02109<br>Telephone number:    (617) 570-1000 | ✓ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT USE ONLY |

| Account or other number by which creditor identifies debtor: | Check here if   ☐ replaces   a previously filed claim dated:<br>this claim   ☐ amends | _____ |
|---|---|---|

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☒ Other ___Refund of Deposit_____

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Your SS #: _____

  Unpaid compensation for services performed
  from _____ to _____
  (date)                    (date)

**2. Date debt was incurred:**
10/5/04

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:**    $62,278.28 (See Exhibit A attached hereto)

☐ If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim.  Attach itemized statement of all interest or additional charges.

| **5. Secured Claim** | **6. Unsecured Priority Claim.** |
|---|---|
| ☐ Check this box if your claim is secured by collateral (including a right of setoff).<br><br>See Schedule A<br>Brief Description of Collateral:<br>☐ Real Estate    ☐ Motor Vehicle<br><br>☐ Other _____<br><br>Value of Collateral:  $ _____<br><br>Amount of arrearage and other charges at time case filed included in secured claim, if any:    $ _____ | ✓ Check this box if you have an unsecured priority claim<br><br>Amount entitled to priority   $   32,332.57<br>Specify the priority of the claim:<br>☐ Wages, salaries or commission (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(3).<br>☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(4).<br>☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507(a)(6).<br>☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child – 11 U.S.C. §507(a)(7).<br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507(a)(8).<br>✓ Other – Specify applicable paragraph of 11 U.S.C. §507(a)(_1_).<br>*Amounts are subject to adjustment  on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |

| 7. | **Credits:** The amount of all payments on this claim has been credit and deducted for the purpose of making this proof of claim. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|---|
| 8. | **Supporting Documents** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS.  If the documents are not available, explain.  If the documents are voluminous, attach a summary.  PLEASE SEE EXHIBIT A ATTACHED HERETO | |
| 9. | **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | |

| Date<br><br>October 03, 2005 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Aaron Akerman<br>VP Finance | |
|---|---|---|

*Penalty for presenting fraudulent claim:  Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 and 3571*

## EXHIBIT A

1. Corporate Vessel Charter Agreement.

2. Invoice Number 80897904498 showing deposit due of 24,182.92 Euros.

3. October 5, 2004 wire transfer summary showing transfer of 24,182.92 Euros.

4. Account statement showing balance of 24,182.92 Euros.

5. December 1, 2004 wire transfer summary showing total transfer of 43,569.60 Euros of which 24,182.92 Euros was for yacht rental.

1

**The Ultimate Living Group**
One Commerce Center, Suite 750
1201 N. Orange Street
Wilmington, DE 19801-1186 USA
TEL: 866-804-7496 / FAX: 866-804-7497
E-Mail: Reservations@Ultimateliving.co.uk
Website: www.Ultimateliving.co.uk

## CORPORATE PASSENGER VESSEL CHARTER AGREEMENT

DATE OF CONTRACT: 27 September 2004

YACHT: Azimut Leonardo 98     LENGTH: 98ft     TYPE: Motoryacht

CHARTERER: Oz Communication located at1100 de la Gauchetiere Street, West, Suite 150
Montreal, Quebec H3B 2S2 Canada

CHARTER BROKER: The Ultimate Living Group

CHARTER TERM FROM (TIME/DATE): 13 Feb. 2005 (18:00) TO (TIME/DATE): 18 Feb.
2005 (18:00)

DELIVERY PORT: Cannes, France

RE-DELIVERY PORT: Same

CRUISING AREA: Static Charter, Port of Cannes

MAX. NO. GUESTS:  Overnight:
6/8     Onboard: 40 Maximum

CHARTER FEE: 32,500.00 Euros

INCLUDED IN FEE: Yacht &
Crew

NOT INCLUDED IN FEE: Mooring Space, Carpeting, Caterers for Receptions, Floral Decorations,
Audiovisual Equipment, electricity, hostesses, security guards, extra furniture rentals, other special requests
including phone rental, desk protection, personal expenses, welcome marquee, signage, custom branding,
etc.

ADDITIONAL PAYMENTS DUE WITH BALANCE: Branding Charges to be determined.

ADVANCE PROVISIONING ALLOWANCE (APA) for items included in this fee: fuel, lubricating oil,
food and beverages for up to 8 guests, personal laundry, electricity.

ADDITIONAL CONDITIONS:
1. Smoking is not permitted inside the yacht
2. Gratuities are at the discretion of the charterer.

BROKER REPRESENTATION:  The OWNER and the CHARTERER each acknowledge that the
CHARTERING BROKER represents the CHARTERER, and the CENTRAL AGENT/CLEARING
HOUSE/MANAGEMENT COMPANY represents the OWNER, each representing the party that the
respective broker has brought to this transaction. The OWNER and the CHARTERER also acknowledge
and agree that in case of a sole BROKER, such BROKER represents the interest of both the OWNER and
the CHARTERER and that such representation shall not render this Agreement voidable.

Charterer's Initials _____     Owner's Initials _____

John Cassiter

4

1.  **PREAMBULATORY/GRANTING CLAUSE:**  This is an Agreement between Owner and Charterer for the charter of the described Yacht under the terms of this Agreement. The Owner agrees to let the Yacht to the Charterer and not to enter into any other Agreement for the Charter of the Yacht for the same period.  The Charterer agrees to hire the Yacht and shall pay the Charter Fee, and any other agreed charges, in cleared funds, on or before the dates and to the Account specified in this Agreement.

2.  **PAYMENT, DEPOSIT AND CANCELLATION PRIOR TO CHARTER:**  Charter fee, balance and any additional payments due with balance shall be paid, in cleared funds, from Charterer to Broker in the amounts and on the dates stated above.

The deposit, balance and any additional payments due with balance are nonrefundable and are agreed as liquidated damages upon cancellation or default of the charter by Charterer before the charter term begins.  If Owner shall recharter the yacht for that same charter term or for any part of it, then the deposit and balance shall be refunded prorata for the time re-chartered less 15% service charge of the full charter fee, along with the unused additional payments made by Charterer. Charterer and Owner expressly acknowledge and agree that the preceding liquidated damage provision represents a reasonable and fair liquidated allocation of damages in circumstances where the same would be otherwise difficult, if not incapable of ascertainment.

If Owner shall cancel or default prior to commencement of charter, then charter fee and any additional payments paid by Charterer shall be refunded in full by Owner to Charterer, and Owner shall pay full commission to Broker.  In addition, if cancellation is within the control of Owner, and Owner does not find an acceptable substitute yacht, then Owner shall pay agreed liquidated damages to Charterer as follows, and shall have no further liability:  If notice of cancellation is delivered three months or more prior to commencement of the charter term, then an amount equal to fifteen percent (15%) of the charter fee shall be paid to the Charterer; more than one (1) month but less than three (3) months an amount equal to twenty-five (25%), more than fourteen (14) days but less than one (1) month, an amount equal to thirty-five (35%), fourteen (14) days or less before commencement of the Charter Period, an amount equivalent to fifty (50%) percent of the charter fee.

If, after signature of this Agreement, the Owner suffers financial failure, the Charterer reserves the right to cancel the Charter, whereupon the Owner shall immediately release the Charterer from his obligations under this Agreement and all monies shall be refunded without deduction. The Owner shall remain liable to pay to the Broker the commission which would have been earned had it not been for the Owner's financial failure. In this context 'financial failure' shall include but not be limited to bankruptcy, liquidation, receivership, voluntary arrangements with creditors or similar arrangements or interventions (be they judicial or non-judicial) made as a result of the Owner's becoming insolvent.

3.  **DELIVERY/REDELIVERY:**  Owner shall deliver the yacht at the location, date and time stated above, and Charterer shall redeliver the yacht at the location, date and time stated for redelivery unless a change is mutually agreed to in writing.  If for reasons of Force Majeure (as defined in Clause 19a) Owner cannot deliver the yacht on time, Owner shall not be in default of this agreement so long as the yacht is delivered within 24 hours of the agreed time, but shall extend the charter term by the time delayed, if mutually agreed, or shall reduce the charter fee prorata to the charter term.  If, however, Owner is unable to deliver the yacht within 24 hours, Owner shall refund to Charterer the full charter fee paid by Charterer, along with additional payments made by Charterer, and Owner shall also pay Broker's commission as if the charter had been completed. If delay is not due to Force Majeure, then Owner shall pay the agreed liquidated damages as stated in Paragraph 2 and shall have no further liability. The Owner does not warrant the yacht's comfort in bad weather conditions for all cruises or passages within the charter area.

Charterer shall not interfere with or cause delay in the agreed redelivery of the yacht.  If there is a delay in redelivery due to Force Majeure, Charterer shall not be held responsible for additional charter fees.  If, however, delay is not due to Force Majeure and Owner sustains a loss in not being able to meet other charter commitments, Charterer shall pay Owner for additional charter time at daily charter rate plus forty percent (40%) of daily rate until the yacht is redelivered at agreed location and Charterer shall also pay necessary expenses for redelivery.  If Owner does not sustain loss of other charters, Charterer shall pay Owner for additional charter time at the prorata charter fee until redelivered at agreed location and Charterer shall also pay necessary expenses for redelivery.

4.  **MAXIMUM NUMBER OF PERSONS; RESPONSIBILITY FOR CHILDREN; HEALTH OF THE CHARTERER'S PARTY:**  The Charterer shall not at any time during the Charter Period permit more than the Maximum Number of Guests sleeping or cruising on board. If children are taken on board, the Charterer shall be fully responsible for their safety, conduct and entertainment and no member of the crew shall be held responsible for their

Charterer's Initials _____          Owner's Initials _____

safety or entertainment.   The nature of a yacht charter may render it unsuitable for anybody with physical disability or undergoing medical treatment.  By signature of this Agreement the Charterer warrants the medical fitness of all members of the Charterer's party for the voyage contemplated by this Agreement.  The Charterer and his party undertake to have all necessary visas and vaccinations for the countries to be visited.

5.     CONDITION:   The yacht shall be in commission and working order, with all equipment required by the U.S. Coast Guard, outfitted as a yacht suitable to its style, size and accommodations, fully furnished including cookware, dining utensils and linens, and lifejackets for the charter party, including children, if appropriate, in clean and good condition throughout, and with tanks filled.  The Charterer shall inspect the yacht before beginning the charter and must immediately notify the Broker or Owner in writing if there is any complaint or visible defect as to the condition, equipment or accommodations of the yacht.

The yacht shall be redelivered to Owner with all equipment, furnishings and fittings in the same condition as received, normal wear and tear excepted.  The cost of damages beyond normal wear and tear, caused by negligence or intentional acts of Charterer, guests or invitees, shall be charged to Charterer and shall be paid by Charterer.

6.     INSURANCE:   Owner shall provide insurance for the yacht during the charter term, for customary risks of a yacht of its size and type, including hull and protection and indemnity coverage, including public liability coverage for the Charterer.

The Owner shall be responsible for all insurance deductibles.  A copy of the yacht's insurance policy is available from Owner upon request.  The Charterer should determine for himself whether this is adequate insurance coverage, and if necessary, arrange for additional coverage prior to commencing the charter.   If the Charterer chooses to arrange for separate or supplemental insurance in addition to the insurance provided by the Owner, this may be arranged with a marine insurance Broker at the Charterer's additional cost.

The Owner and his insurance underwriters accept no responsibility for loss or damage to Charterer's personal property, or for any loss, damage, personal injuries or death related to the yacht's dinghy, windsurfer or personal watercraft, jet skis, waverunners, wave riders, water skis, or any other water-related craft or equipment, or for any loss, damage, personal injuries or death related to swimming, diving, snorkelling, scuba diving, spinnaker flying, halyard flying or boom riding, or from participating in any other water sports whether equipment is supplied by Owner or Charterer.  Any loss, damage, personal injuries or death related to any of the above-mentioned activities shall be the sole risk and responsibility of the Charterer.

7.     CAPTAIN AND CREW:   Owner agrees to provide a Captain and crew.  The Captain and crew shall be appropriately licensed, qualified, knowledgeable and familiar with the yacht and waters of the charter area and have sufficient expertise and experience to manage and handle the yacht safely and competently.  The Captain and crew shall have current merchant mariner documents, if applicable, and participate in an appropriate drug-testing program.  Owner shall provide insurance coverage for the Captain and crew, including that required by the Jones Act.  The Captain shall operate the yacht only for lawful purposes and shall abide by all applicable rules, regulations and laws of the United States and any jurisdiction in which the yacht may travel.

The Captain shall keep a complete log of the voyage as to names of persons aboard, records of monies spent or debts incurred.  The Captain shall also keep a complete log of communications made from the yacht by radio, telephone, fax, or other method, stating the name of caller, the number called, the location of the number called, and the length of time of communications unless paid with Charterer's credit card.

8.     CAPTAIN'S AUTHORITY:   The Captain, together with the Charterer, shall direct the course of the voyage.  The Captain has authority over the safe navigation of the yacht, including issues of wind, weather, routes, anchorages, and the like.  The Captain likewise has authority over the safe use of the equipment, furnishings and appurtenances of the yacht, and may prohibit unsafe activities or use of same.

9.     EXPENSES AND OPERATING COSTS:   Owner shall pay ordinary maintenance expenses for the yacht, including wear and tear.  Unless otherwise noted as costs inclusive in the charter fee, the Charterer shall be responsible for the operating costs, for the entire charter period for himself, his guests, and the crew.  Having paid the Advance Provisioning Allowance (A.P.A.) via the Broker's Account, as required by this Agreement, the Charterer shall be advised by the Captain, at intervals, as to the disbursement of the A.P.A. and shall, if the balance remaining becomes insufficient, in the light of current expenditure, pay to the Captain, in cash, a sufficient sum to maintain an adequate credit balance.

Prior to disembarkation at the end of the charter period, the Captain shall present to the Charterer a detailed account of expenditure with as many supporting receipts as possible, and the Charterer shall pay to the

Charterer's Initials _____        Owner's Initials _____

6

Captain, in cash, the balance of the expenses, or the Captain shall repay to the Charterer, in cash, any balance overpaid, as the case may be.

Payment for special requirements or equipment, shore transport or excursions or any other expenses not customarily considered part of the Yacht's operating costs may be required to be paid via the Broker's account in advance or to the Captain on boarding in addition to the A.P.A.

Unless specific alternative arrangements have been made in writing, in advance, all payments for operating costs etc. shall be payable in cash in the same currency as the Charter Fee. Payment by check, credit card or other negotiable instrument is not normally acceptable due to the itinerant nature of the Yacht's seasonal schedule, and the Charterer should therefore ensure that he is carrying sufficient cash to cover all reasonably foreseeable expenses or arrange to deposit additional funds with the Broker.

10.    **DELAYS, BREAKDOWNS, ACCIDENTS:** In the event of delay, breakdown or accident during the charter term, Captain shall notify Charterer and Owner and allow Owner to resolve the problem. This includes but is not limited to mechanical failure, fire, grounding, collision or other cause which disables the yacht so that it can not safely be used in navigation or is not inhabitable.

If any such event is due to negligence or intentional acts of Charterer, his guests or invitees, then Owner shall attempt to remedy the problem so that the charter may be completed but no charter fee nor other payments made by Charterer shall be refunded and the costs to resolve the problem and redeliver the yacht shall be chargeable to Charterer. In this event, Charterer shall be responsible to transport charter party to original point of yacht departure or disembarkation.

If the event is not due to negligence or intentional acts of Charterer, his guests or invitees, then Owner shall attempt to remedy the problem within 24 hours after notice. In the event that the remedy is not completed within 24 hours after notice to Owner, the charter may be terminated at that point by either Owner or Charterer, with the charter fee to be refunded based upon the prorata uncompleted charter term from the time the yacht became unfit, along with any unused additional payments made by Charterer, as the sole remedy of Charterer. Owner shall be responsible to transport charter party to stated point of disembarkation if event is not due to negligence or intentional acts of Charterer. Charterer recognizes that the charter voyage may not be able to proceed where and when intended due to weather and sea conditions. Charterer or Captain may propose an alternate itinerary.

11.    **SALE OF THE YACHT:** The Owner agrees not to sell the Yacht during the Charter Period as set out on Page One of this Agreement. Should the Owner agree to sell the yacht after the signing of this Charter Agreement, but before delivery to the Charterer, the Owner shall immediately give notice of such sale in writing to the Charterer via the Broker. This information shall be kept in strict confidence by all parties to the Agreement.

Should the vessel be sold one of the following provisions will apply: I)  The Owner shall arrange for the Buyer to take over the Charter Agreement and perform the Charter on the same terms and conditions, either by assignment of the original Charter or by way of a new Charter Agreement between the Charterer and the Buyer and written cancellation without penalty of the original Agreement.

ii)  If the Buyer is unwilling or unable to fulfill the Charter Agreement, the Owner hereby appoints the Broker to procure the Charter of a replacement yacht of similar or superior standard and condition for the Charter period. If a suitable replacement vessel is found, a new Charter Agreement shall be prepared and this original Agreement cancelled. The Owner shall pay the Broker's commission on the original Charter and the Broker may retain any commission due on the replacement yacht.

iii) Should the Owner be unable to obtain a similar or superior yacht for the use of the Charterer on the same terms as this original Agreement or should the Charterer reject the proposed replacement (the Charterer shall not unreasonably reject a substitute yacht of same or superior standard) then this Charter Agreement shall be considered as having been cancelled by the Owner in accordance with Clause 1. All payments made by the Charterer shall be promptly repaid in full to him without deduction, and in addition liquidated damages calculated in accordance with Clause 2, shall be paid. The Broker shall be paid by the Owner the full commission due on this original Agreement.

12.    **DEFAULT & TERMINATION ONCE CHARTER TERM HAS COMMENCED:**  It is mutually agreed that should any installment of charter fee or any running expenses not be paid on the date designated or when requested, Owner shall have the right to terminate the charter if funds are not received within 48 hours of Owner's written notification of default to the Broker. Owner shall resume possession of the yacht without any prejudice to owner's right to claim and/or retain the full amount of the charter fee as a result of Charterer's breach of this Agreement.

Charterer's Initials _____            Owner's Initials _____

7

If Charterer shall terminate or default by notice to Broker or Owner after charter term begins, the charter fee and other payments made or due shall be forfeited. If yacht is rechartered for the original dates or part thereof, refund to Charterer shall be made prorata for the time rechartered less 15% service charge of the full charter fee, along with unused additional payments made by Charterer.

If Owner shall terminate or default, unused charter fee and other payments made by Charterer shall be refunded in full by Owner to Charterer. Exceptions to this are the specific instances in this agreement when Owner may cancel or terminate for just cause without refund. It is further agreed that, in such event, Owner shall pay to Broker the commission on the full charter amount.

In addition, if cause for termination or default is within the control of Owner, then Owner shall pay agreed liquidated damages to Charterer of fifty percent (50%) of the unused charter fee and shall have no further liability.

13.    **INDEMNITY, HOLD HARMLESS, DEFEND:** Charterer agrees to indemnify, hold harmless and defend Owner from any and all claims and liabilities for loss or damage to Charterer, guests, invitees, and to any third parties whatsoever, which may be occasioned by the negligence or intentional acts of Charterer, guests or invitees, except to the extent such claims are covered by insurance.

14.    **RESTRICTIONS OF USE:** Charterer agrees that the yacht shall be used exclusively as an uninspected small passenger vessel and shall not transport cargo, nor engage in any trade, nor violate any laws of the United States or any jurisdiction in which the yacht may be travelling.

The yacht shall not navigate beyond the navigation limits set forth in the yacht's insurance policy without prior approval by the yacht's insurer, with any additional premium paid by Charterer. The yacht shall not navigate where not legally permissible due to flag of the vessel or restrictions on charter yachts. Operation of the yacht beyond the approved area or in violation of law is a breach of this Agreement and cause for termination of this Agreement, without refund of charter fee.

15.    **NON-ASSIGNMENT:** Charterer may not assign this Agreement or sub-charter the yacht without the prior express written consent of Owner, not to be unreasonably withheld.

16.    **MARITIME LIENS:** Charterer shall not permit maritime liens, salvage or debts to be incurred against the yacht or the credit of Owner. Charterer shall not abandon the yacht or enter into a salvage agreement without prior consent of Owner.

17.    **PENALTIES, FINES, CLAIMS:** The yacht must comply with all laws, rules and regulations of government agencies of the United States, individual states, and other jurisdictions where the yacht may travel, including federal and state parks, sanctuaries and protected areas. Captain shall be responsible for compliance and Charterer shall abide by Captain's decisions in this regard. Charterer shall be liable for fines, penalties, damages and forfeitures as a result of negligence or intentional acts of Charterer, guests or invitees, and Charterer shall indemnify, hold harmless and defend Owner and Broker for such acts.

18.    **DRUGS AND OTHER ILLEGAL ACTIVITIES:** The use, transport, or possession of illegal drugs or narcotics, including marijuana, or of any other contraband, or the participation in any other unlawful activity, such as the transport of illegal aliens, is strictly prohibited. The participation in any of these activities by any member or guest of the charter party constitutes a breach of the charter and shall be cause for immediate termination of the charter without refund of charter fee and additional payments made by Charterer.

19.    **DEFINITIONS:**

a)    **Force Majeure:** In this Agreement "Force Majeure" means any cause directly attributable to acts, events, non-happenings, omissions, accidents, or Acts of God beyond the reasonable control of the Owner or the Charterer (including, but not limited to, strikes, lock-outs or other labor disputes, civil commotion, riots, blockade, invasion, war, fire, explosion, sabotage, storm, collision, grounding, fog, governmental act or regulation, major mechanical or electrical breakdown beyond the crew's control and not caused by Owner's negligence. Crew changes do not constitute "Force Majeure". "Force Majeure" does not excuse the Owner from payment of commissions.

**Owner, Charterer, and Broker:** Throughout the Agreement, the terms "Owner," "Charterer," and "Broker" and corresponding pronouns shall be construed to apply whether the Owner, Charterer, or Broker is male, female, or corporate, singular, or plural, as the case may be. For the purposes of this Clause, the terms OWNER and CHARTERER shall be understood to mean the named company or individual, or any company owned or

Charterer's Initials _____            Owner's Initials _____

8

controlled by them including companies owned indirectly or via Trustees, any Director of such a company, Beneficial Owner, Nominee, Agent or Charterer's Guest.

o)    Escrow Agent:    Owner, Charterer and Broker recognize Escrow Agent to be the holder of all Charter Funds except applicable APA or other fees, such as delivery fees, that might be paid directly to the Captain or the Yacht's Account. Escrow Agent shall hold all Charter Funds in accordance with the stated instructions under Disbursement of Funds in a separate Charter Fund Account not Granada Mediable to the Owner or charterer, and shall release those funds to the appropriate parties only as stated in Disbursement of Funds.

20.    BROKER:    Owner and Charterer recognize The Ultimate Living Group as sole Broker in connection with this Agreement, and Owner agrees to pay said Broker the customary and usual brokerage fees in connection with said charter, any extensions, renewals, subsequent charters, and/or in connection with the subsequent purchase of the yacht by Charterer within a period of two (2) years from the date of completion of the charter term.

Broker's commission shall be earned upon Broker's receipt of this Agreement signed by Charterer and Owner and Broker's receipt of Charterer's Deposit in cleared funds. Broker's commission is payable from Charterer's Deposit or directly from Owner in the event that Charterer's Deposit is refunded.

The parties understand and agree that Broker does not guarantee the performance of Owner and Charterer under this Agreement. All information and data regarding the yacht has been provided and represented to the Broker by the Owner, and while the Broker stands ready to provide Charterer with such information which is believed to be reliable, the Broker does not act as a Guarantor of such information, and the Owner and Charterer agree to indemnify and hold the Broker harmless if such information is not reliable.

It is understood that the function of the Broker is solely that of arranging the charter, and the Broker is in no way responsible for the actions of the Charterer or Captain/Crew under this Agreement. It is further understood that once this Agreement has been signed by both parties and a deposit of the charter fee has been paid, the said Broker shall have no further obligation or responsibility in connection herewith to either party, nor will the Broker be liable to be sued on the contract, nor be liable for any matters which occur during the charter. The parties agree to indemnify, hold harmless and defend Broker from any and all claims by either of them, their guests, invitees, employees, agents and third parties, including Captain and crew, for any liabilities for loss, damage, personal injury, death or any claims whatsoever.

The Broker shall not be responsible or liable in any way for any claim, loss, death, injury, or damage to persons or property suffered or incurred by any person in connection with this charter, or any portion of it. Further, the Broker also shall not be responsible for any delays, substitutions, equipment, change in services or accommodations, or the acts or omissions on the part of the operators or crew of any yacht described in the charter or for any changes in the itinerary deemed necessary or appropriate for the safety or convenience of passengers.

Representations made by Broker concerning the cruising area, the yacht, captain and crew are made in good faith but without warranty. It is understood and agreed by the Owner and Charterer that the Broker has made no representations or warranties, either actual, expressed, or implied, as to the condition or operation of the yacht chartered hereunder, nor has the Owner or Charterer been influenced to enter into this Agreement in reliance upon any representation or warranty made by the Broker, which is not expressly set forth in this Agreement.

21.    COMPLAINTS:    The Charterer shall give notice of any complaint in the first instance to the Captain on board and note shall be taken of the time, date and nature of the complaint.

If, however, this complaint cannot be resolved on board the Yacht then the Charterer shall give notice to the Owner or to the Broker on the Owner's behalf as soon as practicable after the event giving rise to the complaint has taken place and anyway within twenty-four (24) hours of the event or occurrence unless it is impracticable due to failure or non-availability of communications equipment. The complaint may be made verbally in the first instance but shall be confirmed as soon as possible in writing (by fax, telex or mail) specifying the precise nature of the complaint.

22.    ARBITRATION:    Any disputes arising under this Agreement shall be submitted by either party for binding arbitration to the American Arbitration Association.

23.    VENUE AND APPLICABLE LAW:    This Agreement shall be construed according to the maritime laws of the United States. In the event of any gap in the applicability of such laws, or where there is no applicable maritime law, the laws of the state of residence or the principal place of business of the Owner shall apply. The Charterer and Owner expressly acknowledge and agree that the sole and exclusive venue for any legal action pertaining to this Agreement and its enforcement or interpretation shall be in the state of the Owner's residence or

Charterer's Initials _____    Owner's Initials _____

9

principal place of business and Charterer hereby expressly agrees, consents and submits to the personal jurisdiction of the state or federal courts of that jurisdiction. This Agreement shall be construed according to general maritime law of the United States and laws of the state of the residence or principal place of business of the Owner. Venue for any legal action shall be in the state where the Owner resides or has its principal place of business.

24.    **ATTORNEY FEES:** The prevailing party shall be entitled to costs, expenses and attorney fees for litigation/arbitration between Owner and Charterer for disputes arising out of this Agreement or the charter. Either party is entitled to reimbursement from the other party for costs, expenses and attorney fees incurred while defending any third party claims for which the other party is found to be responsible. Broker shall be entitled to costs, expenses and attorney fees from the losing party for litigation/arbitration arising out of this Agreement or the charter, and Broker shall be entitled to payment from Owner for costs, expenses and attorney fees for any action necessary to collect Broker's fees.

25.    **NOTICES:** Any notice given or required to be given by either Party to this Agreement shall be communicated in any form of writing and shall be deemed to have been properly given if proved to have been dispatched pre-paid and properly addressed by mail or bona fide courier service or by fax or telex, in the case of the Owner, to him or to the Broker at their addresses as per this Agreement or, in the case of the Charterer, to his address as per this Agreement or, where appropriate, to him on board the Yacht.

26.    **WAIVER OR MODIFICATION:** This Agreement is the entire agreement of the parties. No waiver or modification of this Agreement shall be effective unless in writing and signed by the parties.

27.    **FACSIMILE:** Both parties acknowledge that this Agreement may be transmitted between them by facsimile machine and both parties intend that a faxed contract containing either original and/or copies of the parties' signature shall constitute a binding contract.

UPON SIGNING THIS AGREEMENT, OWNER OR OWNER'S REPRESENTATIVE ACCEPTS FULL RESPONSIBILITY TO ASSURE THAT THE YACHT AND CREW ARE IN COMPLIANCE WITH ALL CHARTER LAWS OF THE UNITED STATES TO WHICH THE YACHT IS FLAGGED, INCLUDING VESSEL DOCUMENTATION, REGISTRATION, AND CAPTAIN/YACHT LICENSING, AS ARE NECESSARY TO SUPPORT THE NATURE OF THIS AGREEMENT, OR ACCEPTS ALL RESPONSIBILITIES AS IF THE YACHT AND CREW WERE IN SUCH COMPLIANCE. I HAVE READ AND UNDERSTOOD THE TERMS OF THIS AGREEMENT. CLAUSES 1-27 PLUS ADDITIONAL CONDITIONS OR ADDENDA LISTED ABOVE, BEFORE SIGNING:

OWNER or OWNER'S AGENT:                         CHARTERER:

_____                          By: (Print)  _AARON ALDERMAN_

By: (Print)_____                        Date:  _9-27-2004_

Date:_____

_____                          _____
Witness to OWNER                                Witness to CHARTERER

BROKER:

_____

By: (Print)_____

Date:_____

_____
Witness to BROKER

March 1, 2003 - MYBA compatible

2

*The Ultimate Living Group*
One Commerce Center, Suite 750
1201 N. Orange Street
Wilmington, DE 19801-1186 USA
TEL: 866-804-7496 / FAX: 866-804-7497
E-Mail: Reservations@Ultimateliving.co.uk
Website: www.Ultimateliving.co.uk

Invoice Number: 8087904496
Date: 27 September 2004

Invoice Due By: 4 October 2004
Group Number: C828756

Invoice details: 3GSM World Congress Corporate Yacht Charter (see details below)
Billing Questions: admin@ultimateliving.co.uk
Sales: reservations@ultimateliving.co.uk

Bill to:
OZ Communications
1100 de la Gauchetiere Street, West
Suite 150
Montreal, Quebec
H3B 2S2 Canada
Direct line: 514-390-2906 / Fax: 514-390-0033
Email: Beverly.Wilks@OZ.com

Please include your Group Number (above) when corresponding with us.

|  |  |
|---|---|
|  | 48,365.84 Euros |
| Gross Current Charges: | 0.00 |
| Other Charges/Adjustments: | 0.00 |
| Previous Balance: | 0.00 |
| Payments Applied: | 48,365.84 |
| Net Payment Due: |  |

Item Number: 4766741457 Details:

|  |  |  |
|---|---|---|
|  |  | 32,500.00 Euros |
| 1. | Charter Fee: | 9,500.00 |
| 2. | Advance Provisioning Allowance: | 1,365.84 |
| 3. | Port Charges: | 850.00 |
| 4. | Quaiside Welcome Canopy: | 3,650.00 |
| 5. | Carpeting Deck Protection: | 24,182.92 |
|  | Deposit due by 4 Oct . 2004: |  |

***To Pay By Wire Transfer, include Group Number and Invoice Number:

INCOMING WIRE TRANSFER INSTRUCTIONS

| | |
|---|---|
| SWIFT CODE: | PNCCUS33 |
| ABA BANK NUMBER: | 031100089 |
| BANK: | PNC BANK, NA |
| ADDRESS: | 300 DELAWARE AVENUE |
|  | WILMINGTON, DE 19801 USA |
| FOR ACCOUNT: | 56-0480-8599 |
| ACCOUNT NAME: | THE ULTIMATE LIVING GROUP, LLC |

*Corporate Accommodations*                          *Superyacht & Aircraft Charters*

3

3

Internet Banking Solutions i∗c.

OZ COMMUNICATIONS INC : # 091896  ⋔ Anna Maria Accardi

Consult a wire transfer

From account          To beneficiary          

0006-07431-0017169        THE ULTIMATE LIVING GROUP
29,945.71 USD                   24,182.92 EUR

with exchange rate
1.2383                                                  — 50% yacht

Total debited :    29,945.71 USD        Total transferred :
                                          24,182.92 EUR              50% Deposit
                                                                      Invoice

1   Information of wire transfer

Ordering customer
Name :                  OZ COMMUNICATIONS INC
Civic no., Street :     1100, DE LA GAUCHETIERE OUEST, APT.
City & Prov./State :    MONTREAL, QC-QUEBEC
Country :               CANADA
From account :          0006-07431-0017169  USD

Information on the wire transfer
Reference no. :         47 ✗
Processing date :       2004-10-05 ✗
To beneficiary :        THE ULTIMATE LIVING GROUP
Amount to be transferred :  24,182.92 EUR

Reason of wire transfer
> INVOICE 8087904498-DEPOSIT
>

Fees for the wire transfer
Payed by the ordering customer  /  monthly billing

2   Information relative to the beneficiary

Beneficiary bank
Code of bank :          SWIFT PNCCUS33
Name of bank :          PNC BANK NA
Civic no., Street :     300 DELAWARE AVENUE
City & Prov./State :    WILMINGTON, DE 19801
Country :               UNITED STATES

Identification of the beneficiary

Currency :              EUR  (Euro, European Union)

10/5/2004

4

*Dec 01 2004.*

*$48,569.⁶⁰ ȷ euros*

### The Ultimate Living Group
One Commerce Center, Suite 750
1201 N. Orange Street
Wilmington, DE 19801-1186 USA
TEL: 866-804-7496 / FAX: 866-804-7497
E-Mail: Reservations@Ultimateliving.co.uk
Website: www.Ultimateliving.co.uk

29 October 2004    *808790419Y*    Email: Beverly.Wilks@OZ.com/

*— datconhold si pueo*

Ms. Beverly Wilks
Manager, Marketing & Communications
OZ Communications
1100 de la Gauchetiere Street, West, Suite 150
Montreal, Quebec
H3B 2S2 Canada

RE: 2005 3GSM WORLD CONGRESS CORPORATE YACHT CHARTER;
ACCOUNT STATEMENT & ARRIVAL/PROVISIONING,
CONFIRMATION NUMBER DS98.

Dear Beverly:

In anticipation of the 2005 3GSM World Congress, please find the following Account
Statement and Arrival & Provisioning Forms for your Corporate Yacht Charter
therefor. Please return both to our offices by 1 December 2004.

The following are the charges for your Corporate Yacht Charter:

| | | |
|---|---|---|
| a. | Charter Fee: | 32,500.00 Euros |
| b. | APA Deposit: | 9,500.00 |
| c. | Port Charges: | 1,865.84 |
| d. | Quaiside Welcome Canopy: | 850.00 |
| e. | Carpeting Deck Protection: | 3,650.00 |
| f. | Less Deposit Previously Paid: | (24,182.92) |
| g. | Balance due by 1 December, 2004: | 24,182.92 |

*YAchT*

*⟨ (24,182.92) ① euro 32,332.57*

Your boarding voucher, directions, emergency and other arrival information will be
sent to you within shortly after receipt of final payment and the Arrival Documents.
Feel free to let us know how we can be of further assistance.

All the best,

John@Ultimateliving.co.uk    *$48,569.60*

JL/ida

Enclosures

*IrsT DeposiT Rec 47 $24,182.⁹² eur. 05/oct/2004*

*2ᴺᴰ Dep: Rec 6r $ 24,182.⁹² euros 01/Dec/2004.*

Corporate Accommodations                    Superyachts & Aircraft Charters

1

5

Internet Banking Solutions Inc.

Anna Maria Accardi
OZ COMMUNICATIONS INC (91894)

Consult a wire transfer



From account
0006-07431-0017169
58,252.56 USD

with exchange rate
1.3370

Total debited : 58,252.56 USD

To beneficiary
THE ULTIMATE LIVING GROUP
43,569.60 EUR

Total transferred :
43,569.60 EUR

24,182.⁹² yacht
19,386.⁶⁸ rooms.

Final put
{

---

**1  Information of wire transfer**

Ordering customer

Name : OZ COMMUNICATIONS INC
Civic no., Street : 1100, DE LA GAUCHETIERE OUEST, APT.
City & Prov./State : MONTREAL, QC-QUEBEC
Country : CANADA
From account : 0006-07431-0017169  USD

Information on the wire transfer

Reference no. : 68
Processing date : 2004-12-01
To beneficiary : THE ULTIMATE LIVING GROUP
Amount to be transferred : 43,569.60 EUR

Reason of wire transfer
> INVOICE 024758739, 93542213883 AND 6087904498
>

Fees for the wire transfer
> Payed by the ordering customer  /  monthly billing

---

**2  Information relative to the beneficiary**

Beneficiary bank

Code of bank : SWIFT PNCCUS33
Name of bank : PNC BANK NA
Civic no., Street : 300 DELAWARE AVENUE
City & Prov./State : WILMINGTON, DE 19801
Country : UNITED STATES

Identification of the beneficiary

Currency : EUR (Euro, European Union)
Account no. : 5604808601
Name : THE ULTIMATE LIVING GROUP

https://commercial.bnc.ca/SBIComWeb/EventDispatch/wireBrowse

12/1/

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

WORLDSPAN, L.P.,                         :
                                         :
          Plaintiff,                     :
                                         :
     v.                                  :  Civil Action No. 03-1081 JJF
                                         :
THE ULTIMATE LIVING GROUP, LLC,          :  In Admiralty
and JOHN RANDALL LASSITER, III,          :
                                         :
          Defendants.                    :

*# 100*

*Claim #3*

## O R D E R

WHEREAS, Judgement (D.I. 11) was entered against Defendant The Ultimate Living Group, LLC ("Ultimate") on April 30, 2004, and vacated on September 12, 2005 (D.I. 45);

WHEREAS, the Court granted Plaintiff's Motion For Reconsideration (D.I. 75) and ordered Ultimate to file further briefing on the issue of whether vacatur of the default judgment is warranted;

WHEREAS, Ultimate has failed to respond to the Court's Order and Plaintiff continues to request reinstatement of the previously entered Judgment (D.I. 97);

NOW THEREFORE, IT IS HEREBY ORDERED that:

1.   The Judgement (D.I. 11) entered against Defendant The Ultimate Living Group, LLC is **REINSTATED** *nunc pro tunc* as of April 30, 2004.

2.   Plaintiff shall provide notice of this Order to the Chapter 7 trustee appointed in the Chapter 7 bankruptcy case of Defendant Ultimate Living Group, LLC.

3.    The Clerk is instructed to close the above-captioned
action in accordance with the Judgment entered against Defendant
John Randall Lassiter, III (D.I. 95) and the Judgement entered
against Defendant The Ultimate Living Group, LLC. (D.I. 11), as
reinstated by this Order.

October 17, 2007
DATE

UNITED STATES DISTRICT JUDGE

# EXHIBIT D
# PROPOSED DISTRIBUTION

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:
THE ULTIMATE LIVING GROUP, LLC
                    Debtor.

Case No. 04-12990/MFW

## TRUSTEE'S PROPOSED DISTRIBUTION
## OF PROPERTY OF THE ESTATE

DATED:  5/10/08

Alfred T. Giuliano, Chapter 7 Trustee, Trustee
750 Route 73 South
Suite 110
Marlton, NJ  08053
(856) 596-7000

## DISTRIBUTION SUMMARY SHEET

CASE NAME:       THE ULTIMATE LIVING GROUP, LLC
CASE NUMBER:    04-12990/MFW
TRUSTEE NAME:   Alfred T. Giuliano, Chapter 7 Trustee

| Kinds of Claims | Listed by Priority | To Be Distributed: |
|---|---|---|
| § 364(d) | Superpriority Secured Credit | 0.00 |
| § 506(c) | Costs and Expenses Charged to Collateral | 0.00 |
| § 506(a) | Indefeasible Secured Credit | 0.00 |
| § 363(j) | Co-Owner Sale Costs and Expenses | 0.00 |
| § 363(j) | Co-Owner Sale Proceeds | 0.00 |
| § 522(k) | Admin. Expenses Charged to Debtors Collateral | 0.00 |
| § 522(d) | Debtors Exemptions | 0.00 |
| § 364(c) | Superpriority Unsecured Credit | 0.00 |
| § 507(b) | Superpriority Administrative Expenses | 0.00 |
| § 507(a)(1) | Chapter 7 Administrative Expenses, Fees & Charges | 22,105.17 |
| § 726(b) | Chapter 11 or 13 Administrative Expenses | 21,158.82 |
| § 507(a)(2) | Involuntary Gap Credit | 0.00 |
| § 507(a)(3) | Pre-Petition Wages, Salaries and Commission | 0.00 |
| § 507(a)(4) | Employee Benefit Plan Contributions | 0.00 |
| § 507(a)(5) | Grain Production or United States Fisherman | 0.00 |
| § 507(a)(6) | Consumer Deposits | 0.00 |
| § 507(a)(7) | Alimony and Child Support | 0.00 |
| § 724(b) | Subordinated tax Liens and Junior Liens | 0.00 |
| § 507(a)(8) | Tax and Duty Claims | 0.00 |
| § 507(a)(9) | Insured Depository Institutions | 0.00 |
| § 726(a)(2) | Timely Filed and Excused Tardily Filed Claim | 0.00 |
| § 726(a)(3) | Unexcused Tardily Filed Claims | 0.00 |
| § 726(a)(4) | Fines, Penalties, Forfeitures & Punitive Damages | 0.00 |
| § 726(a)(5) | Post-Petition Interest | 0.00 |
| § 726(a)(6) | Debtor(s) Surplus | 0.00 |
| Miscellaneous payments | | 0.00 |
| Total | | 43,263.99 |

Including United States trustee Quarterly Fee (If Applicable)
FICA, Federal Income tax and New Jersey Income Tax have been withheld

Printed:  05/09/08 03:11 PM

## Claims Proposed Distribution

### Case:  04-12990   ULTIMATE LIVING GROUP LLC

**Case Balance:**    $43,263.99        **Total Proposed Payment:**    $43,263.99        **Remaining Balance:**    $0.00

| Claim # | Claimant Name | Type | Amount Filed | Amount Allowed | Paid to Date | Claim Balance | Proposed Payment | Remaining Funds |
|---|---|---|---|---|---|---|---|---|
| PNC | PNC Records Services | Admin Ch. 7 | 27.50 | 27.50 | 27.50 | 0.00 | 0.00 | 43,263.99 |
| | <2420-00  Costs to Secure/Maintain Property (E.g., casualty insurance, locksmith, repairs)> | | | | | | | |
| UST | United States Trustee's Office, District of Delaware | Admin Ch. 7 | 4,500.00 | 4,500.00 | 0.00 | 4,500.00 | 4,500.00 | 38,763.99 |
| | <2950-00  U.S. Trustee Quarterly Fees> | | | | | | | |
| BOND | International Sureties, Ltd. | Admin Ch. 7 | 53.20 | 53.20 | 53.20 | 0.00 | 0.00 | 38,763.99 |
| | <2300-00  Bond Payments> | | | | | | | |
| ARCHEX P | Archer & Greiner P.C. | Admin Ch. 7 | 428.79 | 428.79 | 0.00 | 428.79 | 428.79 | 38,335.20 |
| | <3220-00  Attorney for Trustee Expenses (Other Firm)> | | | | | | | |
| ARCHFE E | Archer & Greiner P.C. | Admin Ch. 7 | 10,044.00 | 10,044.00 | 0.00 | 10,044.00 | 10,044.00 | 28,291.20 |
| | <3210-00  Attorney for Trustee Fees (Other Firm)> | | | | | | | |
| GMCOEX P | Giuliano, Miller & Company LLC | Admin Ch. 7 | 28.98 | 28.98 | 0.00 | 28.98 | 28.98 | 28,262.22 |
| | <3320-00  Accountant for Trustee Expenses (Trustee Firm)> | | | | | | | |
| GMCOFE E | Giuliano, Miller & Company LLC | Admin Ch. 7 | 998.50 | 998.50 | 0.00 | 998.50 | 998.50 | 27,263.72 |
| | <3310-00  Accountant for Trustee Fees (Trustee Firm)> | | | | | | | |
| TRUSTEX P | Alfred T. Giuliano | Admin Ch. 7 | 187.67 | 187.67 | 0.00 | 187.67 | 187.67 | 27,076.05 |
| | <2200-00  Trustee Expenses> | | | | | | | |
| TRUSTFE E | Alfred T. Giuliano | Admin Ch. 7 | 5,917.23 | 5,917.23 | 0.00 | 5,917.23 | 5,917.23 | 21,158.82 |
| | <2100-00  Trustee Compensation> | | | | | | | |
| **SUBTOTAL FOR  ADMIN CH. 7** | | | **22,185.87** | **22,185.87** | **80.70** | **22,105.17** | **22,105.17** | |
| 2A | OZ Communications, Inc. | Admin Ch. 11 | 32,332.57 | 32,332.57 | 0.00 | 32,332.57 | 21,158.82 | 0.00 |
| | <6990-00  Other Prior Chapter Administrative Expenses> | | | | | | | |
| | **Claim Memo:**  Deposit wired on 10/05/04 $29,945.71 Pre-petition | | | | | | | |
| | Deposit wired on 12/01/04 $32,332.57 Chapter 11 | | | | | | | |
| | Court entered entire amount as Priority.  Claim filed as $32,332.57 Priority & $29,945.71 | | | | | | | |
| FLASTER F | Flaster/Greenberg P.C. | Admin Ch. 11 | 33,124.50 | 8,031.82 | 8,031.82 | 0.00 | 0.00 | 0.00 |
| | <6700-00  Other Professional Fees (Prior Chapter)> | | | | | | | |
| | **Claim Memo:**  1st Fee Application for Period of October 18, 2004 through May 31, 2005 $33,124.50 | | | | | | | |
| FLASTER X | Flaster/Greenberg P.C. | Admin Ch. 11 | 1,968.18 | 1,968.18 | 1,968.18 | 0.00 | 0.00 | 0.00 |
| | <6710-00  Other Professional Expenses (Prior Chapter)> | | | | | | | |
| | **Claim Memo:**  1st Fee Application for Period of October 18, 2004 through May 31, 2005 $1,968.18 | | | | | | | |
| **SUBTOTAL FOR  ADMIN CH. 11** | | | **67,425.25** | **42,332.57** | **10,000.00** | **32,332.57** | **21,158.82** | |
| 1 | Department of the Treasury | Priority | 15,500.00 | 15,500.00 | 0.00 | 15,500.00 | 0.00 | 0.00 |
| | **Claim Memo:**  WT-FICA Tax Period 03/31/02 $1,000.00 | | | | | | | |
| | WT-FICA Tax Period 12/31/02 $1,000.00 | | | | | | | |
| | FUTA Tax Period 12/31/02 $500.00 | | | | | | | |

Printed: 05/09/08 03:11 PM

# Claims Proposed Distribution

## Case: 04-12990   ULTIMATE LIVING GROUP LLC

| Case Balance: | $43,263.99 | | Total Proposed Payment: | $43,263.99 | | Remaining Balance: | $0.00 | |
|---|---|---|---|---|---|---|---|---|

| Claim # | Claimant Name | Type | Amount Filed | Amount Allowed | Paid to Date | Claim Balance | Proposed Payment | Remaining Funds |
|---|---|---|---|---|---|---|---|---|
| | | WT-FICA Tax Period 3/31/03 $1,200.00 | | | | | | |
| | | WT-FICA Tax Period 6/30/03 $1,300.00 | | | | | | |
| | | WT-FICA Tax Period 9/30/03 $1,400.00 | | | | | | |
| | | WT-FICA Tax Period 12/31/03 $1,500.00 | | | | | | |
| | | FUTA Tax Period 12/31/03 $500.00 | | | | | | |
| | | WT-FICA Tax Period 3/31/04 $1,600.00 | | | | | | |
| | | WT-FICA Tax Period 6/30/04 $1,700.00 | | | | | | |
| | | WT-FICA Tax Period 9/30/04 $1,800.00 | | | | | | |
| | | WT-FICA Tax Period 12/31/04 $1,900.00 | | | | | | |
| **SUBTOTAL FOR   PRIORITY** | | | **15,500.00** | **15,500.00** | **0.00** | **15,500.00** | **0.00** | |
| 2U | OZ Communications, Inc. | Unsecured | 29,945.71 | 29,945.71 | 0.00 | 29,945.71 | 0.00 | 0.00 |
| | Claim Memo: | Deposit wired on 10/05/04 $29,945.71 Pre-petition | | | | | | |
| | | Deposit wired on 12/01/04 $32,332.57 Chapter 11 | | | | | | |
| | | Court entered entire amount as Priority.  Claim filed as $32,332.57 Priority & $29,945.71 Unsecured. | | | | | | |
| | | Amended Claim 4/30/08 filed listing $32,332.57 Administrative & $29,945.71 Unsecured. | | | | | | |
| 3 | Worldspan L.P. | Unsecured | 170,040.00 | 170,040.00 | 0.00 | 170,040.00 | 0.00 | 0.00 |
| | Claim Memo: | Judgment | | | | | | |
| **SUBTOTAL FOR   UNSECURED** | | | **199,985.71** | **199,985.71** | **0.00** | **199,985.71** | **0.00** | |
| | Total for Case 04-12990 : | | **$305,096.83** | **$280,004.15** | **$10,080.70** | **$269,923.45** | **$43,263.99** | |

## CASE SUMMARY

| | Amount Filed | Amount Allowed | Paid to Date | Proposed Payment | % paid |
|---|---|---|---|---|---|
| **Total Administrative Claims :** | $89,611.12 | $64,518.44 | $10,080.70 | $43,263.99 | 82.681308% |
| **Total Priority Claims :** | $15,500.00 | $15,500.00 | $0.00 | $0.00 | 0.000000% |
| **Total Unsecured Claims :** | $199,985.71 | $199,985.71 | $0.00 | $0.00 | 0.000000% |

Printed: 05/09/08 03:35 PM

# Claims Distribution Register

Page: 1

## Case: 04-12990   ULTIMATE LIVING GROUP LLC

| Claim # | Date | Pri | Claimant / Proof / \<Category\> / Memo | Amount Filed | Amount Allowed | Paid to Date | Claim Balance | Proposed Payment |
|---|---|---|---|---|---|---|---|---|
| **Admin Ch. 7 Claims:** | | | | | | | | |
| | 05/31/05 | 200 | PNC Records Services<br>Attn: Rayna Walker, Records Custodian<br>500 First Ave, Mail Stop: P7-PFSC-02-F<br>Pittsburgh, PA 15219<br>\<2420-00  Costs to Secure/Maintain Property (E.g., casualty insurance, locksmith, repairs)\> | 27.50 | 27.50 | 27.50 | 0.00 | 0.00 |
| | 05/31/05 | 200 | United States Trustee's Office, District<br>of Delaware<br>J. Caleb Boggs Federal Building<br>844 King Street, Room 2207<br>Wilmington, DE 19801<br>\<2950-00  U.S. Trustee Quarterly Fees\> | 4,500.00 | 4,500.00 | 0.00 | 4,500.00 | 4,500.00 |
| | 05/31/05 | 200 | International Sureties, Ltd.<br>701 Poydras Street, Suite 420<br>New Orleans, LA 70139<br>\<2300-00  Bond Payments\> | 53.20 | 53.20 | 53.20 | 0.00 | 0.00 |
| | 05/31/05 | 200 | Archer & Greiner P.C.<br>One Centennial Square<br>PO Box 3000<br>Haddonfield, NJ 08033-0968<br>\<3220-00  Attorney for Trustee Expenses (Other Firm)\> | 428.79 | 428.79 | 0.00 | 428.79 | 428.79 |
| | 05/31/05 | 200 | Archer & Greiner P.C.<br>One Centennial Square<br>PO Box 3000<br>Haddonfield, NJ 08033-0968<br>\<3210-00  Attorney for Trustee Fees (Other Firm)\> | 10,044.00 | 10,044.00 | 0.00 | 10,044.00 | 10,044.00 |
| | 05/31/05 | 200 | Giuliano, Miller & Company LLC<br>750 Route 73 South, Suite 110<br>Marlton, NJ 08053<br>\<3320-00  Accountant for Trustee Expenses (Trustee Firm)\> | 28.98 | 28.98 | 0.00 | 28.98 | 28.98 |
| | 05/31/05 | 200 | Giuliano, Miller & Company LLC<br>750 Route 73 South, Suite 110<br>Marlton, NJ 08053<br>\<3310-00  Accountant for Trustee Fees (Trustee Firm)\> | 998.50 | 998.50 | 0.00 | 998.50 | 998.50 |
| | 05/31/05 | 200 | Alfred T. Giuliano<br>750 Route 73 South<br>Suite 110<br>Marlton, NJ 08053<br>\<2200-00  Trustee Expenses\> | 187.67 | 187.67 | 0.00 | 187.67 | 187.67 |
| | 05/31/05 | 200 | Alfred T. Giuliano<br>750 Route 73 South<br>Suite 110<br>Marlton, NJ 08053<br>\<2100-00  Trustee Compensation\> | 5,917.23 | 5,917.23 | 0.00 | 5,917.23 | 5,917.23 |
| | | | **Total for Priority 200:   100% Paid** | **$22,185.87** | **$22,185.87** | **$80.70** | **$22,105.17** | **$22,105.17** |
| | | | **Total for Admin Ch. 7 Claims:** | **$22,185.87** | **$22,185.87** | **$80.70** | **$22,105.17** | **$22,105.17** |

Printed: 05/09/08 03:35 PM  **Claims Distribution Register**  Page: 2

## Case: 04-12990   ULTIMATE LIVING GROUP LLC

| Claim # | Date | Pri | Claimant / Proof / <Category> / Memo | Amount Filed | Amount Allowed | Paid to Date | Claim Balance | Proposed Payment |
|---|---|---|---|---|---|---|---|---|
| **Admin Ch. 11 Claims:** | | | | | | | | |
| | 10/07/05 | 300 | OZ Communications, Inc. C/o Goodman Procter LLP 53 State Street Boston, MA 02109 <6990-00  Other Prior Chapter Administrative Expenses> Deposit wired on 10/05/04 $29,945.71 Pre-petition Deposit wired on 12/01/04 $32,332.57 Chapter 11 Court entered entire amount as Priority.  Claim filed as $32,332.57 Priority & $29,945.71 | 32,332.57 | 32,332.57 | 0.00 | 32,332.57 | 21,158.82 |
| | 05/31/05 | 300 | Flaster/Greenberg P.C. 913 Market Street, 7th Floor Wilmington, DE 19801 <6700-00  Other Professional Fees (Prior Chapter)> 1st Fee Application for Period of October 18, 2004 through May 31, 2005 $33,124.50 | 33,124.50 | 8,031.82 | 8,031.82 | 0.00 | 0.00 |
| | 05/31/05 | 300 | Flaster/Greenberg P.C. 913 Market Street, 7th Floor Wilmington, DE 19801 <6710-00  Other Professional Expenses (Prior Chapter)> 1st Fee Application for Period of October 18, 2004 through May 31, 2005 $1,968.18 | 1,968.18 | 1,968.18 | 1,968.18 | 0.00 | 0.00 |
| | | | **Total for Priority 300:    100% Paid** | **$67,425.25** | **$42,332.57** | **$10,000.00** | **$32,332.57** | **$21,158.82** |
| | | | **Total for Admin Ch. 11 Claims:** | **$67,425.25** | **$42,332.57** | **$10,000.00** | **$32,332.57** | **$21,158.82** |
| **Priority Claims:** | | | | | | | | |
| 1 | 03/23/05 | 570 | Department of the Treasury Internal Revenue Service 409 Silverside Road, Stop INSOLVENCY Wilmington, DE 19809 <5800-00  Claims of Governmental Units> WT-FICA Tax Period 03/31/02 $1,000.00 WT-FICA Tax Period 12/31/02 $1,000.00 FUTA Tax Period 12/31/02 $500.00 WT-FICA Tax Period 3/31/03 $1,200.00 WT-FICA Tax Period 6/30/03 $1,300.00 WT-FICA Tax Period 9/30/03 $1,400.00 WT-FICA Tax Period 12/31/03 $1,500.00 FUTA Tax Period 12/31/03 $500.00 WT-FICA Tax Period 3/31/04 $1,600.00 WT-FICA Tax Period 6/30/04 $1,700.00 WT-FICA Tax Period 9/30/04 $1,800.00 WT-FICA Tax Period 12/31/04 $1,900.00 | 15,500.00 | 15,500.00 | 0.00 | 15,500.00 | 0.00 |
| | | | **Priority 570:    0% Paid** | | | | | |

Printed: 05/09/08 03:35 PM  **Claims Distribution Register**  Page: 3

## Case: 04-12990   ULTIMATE LIVING GROUP LLC

| Claim # | Date | Pri | Claimant / Proof / <Category> / Memo | Amount Filed | Amount Allowed | Paid to Date | Claim Balance | Proposed Payment |
|---------|------|-----|--------------------------------------|--------------|----------------|--------------|---------------|------------------|
| **Unsecured Claims:** | | | | | | | | |
| 2U | 10/07/05 | 610 | OZ Communications, Inc. C/o Goodman Procter LLP 53 State Street Boston, MA 02109 <7100-00  General Unsecured § 726(a)(2)> Deposit wired on 10/05/04 $29,945.71 Pre-petition Deposit wired on 12/01/04 $32,332.57 Chapter 11 Court entered entire amount as Priority.  Claim filed as $32,332.57 Priority & $29,945.71 Unsecured. Amended Claim 4/30/08 filed listing $32,332.57 Administrative & $29,945.71 Unsecured. | 29,945.71 | 29,945.71 | 0.00 | 29,945.71 | 0.00 |
| 3 | 10/17/05 | 610 | Worldspan L.P. C/o Palmer Biezup & Henderson LLP 1223 Foulk Road Wilmington, DE 19803-2723 <7100-00  General Unsecured § 726(a)(2)> Judgment | 170,040.00 | 170,040.00 | 0.00 | 170,040.00 | 0.00 |
| | | | **Total for Priority 610:    0% Paid** | **$199,985.71** | **$199,985.71** | **$0.00** | **$199,985.71** | **$0.00** |
| | | | **Total for Unsecured Claims:** | **$199,985.71** | **$199,985.71** | **$0.00** | **$199,985.71** | **$0.00** |
| | | | **Total for Case :** | **$305,096.83** | **$280,004.15** | **$10,080.70** | **$269,923.45** | **$43,263.99** |

# CHASE ⬡

## JPMorgan Chase Bank, N.A.

Back Office Trustee Transfer System

### Transaction Summary Report

From   04/01/2008   To   05/12/2008

Date:   05/12/2008
Time:   9:18:45AM

## Trustee:  500530  Alfred Giuliano

**Account 312930822465      ULTIMATE LIVING GROUP LLC          Case Number : 04-12990**

| Date | Amount | Check No. | Tran Code | Tran Info | Balance |
|---|---|---|---|---|---|
| 04/28/08 | 35.45 | 087 | | MMA Interest Adjustment Credit | 43,237.18 |
| 04/30/08 | 26.81 | INTEREST | | MMA End-of-Month Interest Credit | 43,263.99 |

## TOTALS

| | |
|---|---|
| **Opening Balance:** | **43,201.73** |
| 2 Credits | 62.26 |
| 0 Checks | 0.00 |
| 0 Debits | 0.00 |
| 0 Tefra | 0.00 |
| **Ending Balance:** | **43,263.99** |

ALTHOUGH JPMORGAN CHASE BANK, N.A. MAKES REASONABLE EFFORTS TO ENSURE THE ACCURACY AND RELIABILITY OF THE INFORMATION PROVIDED IN THIS REPORT, JPMORGAN IS NOT RESPONSIBLE FOR ANY ERRORS IN OR OMISSIONS FROM THE INFORMATION. ALL INFORMATION IS PROVIDED "AS IS" TO YOU WITHOUT EXPRESS OR IMPLIED WARRANTIES OF ANY KIND INCLUDING THE WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT OF INTELLECTUAL PROPERTY OR FITNESS FOR ANY PARTICULAR PURPOSE.

**EXHIBIT E**

## APPLICATION FOR TRUSTEE'S COMPENSATION AND EXPENSES

1.       Applicant was appointed trustee of this bankruptcy estate on <u>05/31/05</u>.

2.       Applicant has performed all duties of the trustee as prescribed by Section 704 of the Bankruptcy Code.

3.       Applicant requests compensation in the amount of <u>$5,917.23</u> for such services performed in accordance with Section 704 of the Bankruptcy Code.

4.       Applicant certifies that the amount requested is not in excess of the limitations prescribed by Section 326 of the Bankruptcy Code.

5.       Applicant requests reimbursement in the amount of <u>$187.67</u> for actual and necessary expenses incurred during the administration of this bankruptcy estate.

6.       COMPUTATION OF COMPENSATION

Total disbursement to parties in interest, EXCLUDING DISBURSEMENT TO THE DEBTOR, are <u>$53,344.69</u>. Pursuant to Section 326 of the Bankruptcy Code, compensation is computed as follows:

Percentages Used for Cases Filed after 10/23/94:

| | | | | |
|---|---|---|---|---|
| 25% on 1st | $ | 5,000 | = $ | 1,250.00 |
| 10% on next | $ | 45,000 | = $ | 4,500.00 |
| 5% on next | $ | 950,000 | = $ | 167.23 |
| 3% on balance over | $ | 1,000,000 | = $ | 0.00 |
| Total Compensation | | | = $ | 5,917.23 |

7.       TRUSTEE EXPENSES ITEMIZATION

| Description of Expense | Amount of Expense |
|---|---|
| Bond Premium | $ 0.00 |
| Travel | $ 26.25 |
| Copies | $ 38.00 |
| Postage | $ 60.02 |
| Telephone | $ 35.40 |
| Clerical | $ 0.00 |
| Paralegal | $ 0.00 |
| Supplies | $ 0.00 |
| Distribution Expenses | $ 0.00 |
| Professional Expenses | $ 0.00 |
| Other | $ 28.00 |

WHEREFORE, Applicant requests approval of the payment of compensation in the amount of $5,917.23 and reimbursement of expenses in the amount of $187.67.

Dated: _____

_____
Alfred T. Giuliano, Chapter 7 Trustee, Trustee

Printed: 05/09/08 03:19 PM              **Trustee's Compensation**

**Debtor:** ULTIMATE LIVING GROUP LLC                    **Case:** 04-12990

| Computation of Compensation | | | |
|---|---|---|---|
| Total disbursements to other than the debtor are: | | | 53,344.69 |
| Pursuant to 11 U.S.C. 326, compensation is computed as follows: | | | |
| 25% of First $5,000 | 5,000.00 | = | 1,250.00 |
| 10% of Next $45,000 | 45,000.00 | = | 4,500.00 |
| 5% of Next $950,000 | 3,344.69 | = | 167.23 |
| 3% of Balance | 0.00 | = | 0.00 |
| | | **Calculated Total Compensation:** | $5,917.23 |
| | | Plus Adjustment: | 0.00 |
| | | **Total Compensation:** | $5,917.23 |
| | | Less Previously Paid: | 0.00 |
| | | **Total Compensation Requested:** | $5,917.23 |

| Trustee Expenses | | |
|---|---|---|
| Premium on Trustee's Bond | | 0.00 |
| Travel | 70.0 miles at 37.5 cents per mile | 26.25 |
| Copies | 380 copies at 10.0 cents per copy | 38.00 |
| Postage | | 60.02 |
| Telephone Charges | | 35.40 |
| Clerical / Secretarial | 0.00 hours at 0.00 dollars per hour | 0.00 |
| Paralegal Assistance | 0.00 hours at 0.00 dollars per hour | 0.00 |
| Supplies / Stationery | | 0.00 |
| Distribution Expenses | | 0.00 |
| Professional Expenses | | 0.00 |
| 17 Facsimiles @ $1.00 Each | | 17.00 |
| Tolls & Parking | | 11.00 |
| | **Subtotal Expenses:** | $187.67 |
| | Plus Adjustment: | 0.00 |
| | **Total Expenses:** | $187.67 |
| | Less Previously Paid: | 0.00 |
| | **Total Expenses Requested:** | $187.67 |

The undersigned Trustee certifies under penalty of perjury that the foregoing is true and correct to the best of his/her knowledge and requests the United States Trustee to approve this report and accounts and requests the Court to provide for notice and opportunity for a hearing under 11 U.S.C. 330(a), 502(b), and 503(b) and to thereafter award final compensation or reimbursement of expenses and to make final allowance for the purposes of distribution to claims, administrative expenses, and other payments stated in this report and account.

WHEREFORE, the Trustee requests that this application be approved by this Court and that the Trustee be granted an allowance of $5,917.23 as compensation and $187.67 for reimbursement of expenses. The Trustee further states that no payments have been made or promised to him/her for services rendered or to be rendered in any capacity in this case. No agreement or understanding exists between applicant and any other person for sharing compensation received or to be received.

Dated:   05/09/08                    Signed: _____

                                     Alfred T. Giuliano, Chapter 7 Trustee
                                     750 Route 73 South
                                     Suite 110
                                     Marlton, NJ 08053

**Giuliano Miller & Company, LLC**
750 Rt. 73 South
Suite 110
Marlton NJ 08053

**Phone: (856) 596-7000**       **Fax: (856) 596-8688**

| | |
|---|---|
| The Ultimate Living Group, LLC | |
| C/o Alfred T. Giuliano, Trustee | |
| 750 Route 73 South, Suite 110 | |
| Marlton NJ 08053 | |

| | |
|---|---|
| *Invoice #:* | 17818 |
| *Date:* | 5/9/2008 |
| *Client ID:* | 72070 |

For Professional Services Rendered as Follows:

| Date | Description | Hours |
|------|-------------|-------|
| 5/27/05 | t/cw/ MH @ UST re: appt | 0.20 |
| 5/27/05 | var t/cw/ DD re: both A/C's | 0.30 |
| 5/27/05 | 4 phone calls to PNC; try to locate bankruptcy amt to place freeze on a/c's | 2.30 |
| 5/31/05 | t/cw/ JF re: sale, conv w/ JH | 0.20 |
| 5/31/05 | rev order, log | 0.20 |
| 5/31/05 | t/cw/ PNC bank re: freeze | 0.20 |
| 5/31/05 | prepare copies to PNC re: freeze | 0.20 |
| 5/31/05 | t/cw/ JF re: case background, funds on hand | 0.50 |
| 5/31/05 | rev website; rev docket entries | 1.30 |
| 6/02/05 | emails to/from atty re: contact info, bank accts | 0.30 |
| 6/06/05 | rev PNC letter re: freeze: email to PNC re: turnover rev contact info rec'd | 0.50 |
| 6/09/05 | t/cw/ J Lasiter re: case background | 0.50 |
| 7/06/05 | prepare letter to PNC re: turnover of funds | 0.30 |
| 7/07/05 | process correspondence | 0.40 |
| 7/08/05 | t/cw/ M Harrison re: case status | 0.20 |
| 8/01/05 | follow up corres to PNC re: bank a/c turnover | 0.30 |
| 8/03/05 | update Form I & II | 0.30 |
| 8/04/05 | rev atty letter re: adjourned 341 hearing | 0.10 |
| 8/17/05 | rev B/S, transfer info rec'd | 1.00 |
| 8/24/05 | pay bills | 0.10 |
| 8/25/05 | respond to email | 0.10 |
| 8/25/05 | rev email from UST | 0.10 |
| 9/15/05 | t/cw/ UST re: O2 claim | 0.20 |
| 9/15/05 | t/cw/ atty re: 341 questions | 0.20 |
| 9/16/05 | bank reconciliation | 0.20 |
| 9/16/05 | rev of schedules for 341 | 0.50 |
| 9/19/05 | t/cw/ atty re: 341 | 0.20 |
| 9/19/05 | t/cw/ atty re: 341 | 0.20 |
| 9/20/05 | 341 hearing | 0.30 |
| 9/20/05 | prepare for 341 | 1.00 |
| 10/24/05 | bank reconciliation | 0.10 |
| 11/23/05 | bank reconciliation | 0.10 |
| 12/23/05 | bank reconciliation | 0.20 |
| 1/13/06 | bank reconciliation | 0.10 |
| 1/25/06 | update Form I | 0.20 |
| 2/17/06 | bank reconciliation | 0.10 |
| 3/13/06 | rev motion to dismiss | 0.20 |
| 3/14/06 | bank reconciliation | 0.10 |
| 3/16/06 | t/cw/ JF re: motion to dismiss conf call w/ MH & JF motion to dismiss | 0.20 |
| 4/13/06 | bank reconciliation\ | 0.10 |
| 6/08/06 | bank reconciliation | 0.20 |
| 6/16/06 | bank reconciliation | 0.10 |
| 7/21/06 | bank reconciliation | 0.20 |

Giuliano Miller & Company, LLC

Invoice #:    17818

Client ID: 72070

| Date | Description | Hours |
|------|-------------|-------|
| 8/11/06 | bank reconciliation | 0.20 |
| 8/30/06 | t/cw/ atty re: calls to Huggett for 341 | 0.10 |
| 9/22/06 | bank reconciliation | 0.20 |
| 10/13/06 | bank reconciliation | 0.20 |
| 11/17/06 | bank reconciliation | 0.10 |
| 11/20/06 | rev investigators report | 0.30 |
| 12/12/06 | t/cw/ JF re: 341 | 0.10 |
| 12/12/06 | rev atty corres re: 341 | 0.20 |
| 12/12/06 | rev order on 341 | 0.30 |
| 12/15/06 | bank reconciliation | 0.10 |
| 1/19/07 | bank reconciliation | 0.10 |
| 1/30/07 | 341 hearing prep | 0.50 |
| 2/23/07 | bank reconciliation | 0.20 |
| 3/16/07 | bank reconciliation | 0.20 |
| 4/24/07 | bank reconciliation | 0.20 |
| 4/30/07 | rev order on 341 | 0.20 |
| 5/03/07 | Start Final Report | 1.50 |
| 5/07/07 | Search for Ultimate Living File in Storage | 0.80 |
| 5/15/07 | bank reconciliation | 0.20 |
| 5/21/07 | t/cw/ creditor | 0.20 |
| 6/12/07 | bank reconciliation | 0.10 |
| 6/18/07 | work on TFR, t/cw/ atty re: Flaster Greenberg fee app, O2 claim | 0.60 |
| 6/27/07 | t/cw/ JF re: FG fee app | 0.20 |
| 7/08/07 | work on Form I & II | 0.20 |
| 7/08/07 | email to JF re: Flaster fees | 0.20 |
| 7/13/07 | bank reconciliation | 0.20 |
| 8/10/07 | bank reconciliation | 0.20 |
| 9/18/07 | bank reconciliation | 0.20 |
| 10/12/07 | bank reconciliation | 0.20 |
| 11/26/07 | bank reconciliation | 0.10 |
| 12/28/07 | bank reconciliation' | 0.10 |
| 1/11/08 | bank reconciliation | 0.10 |
| 1/12/08 | work on Form I & II; email to atty | 0.40 |
| 1/16/08 | rev check rec'd from Flaster | 0.10 |
| 2/13/08 | bank reconciliation | 0.30 |
| 3/11/08 | bank reconciliation | 0.20 |
| 4/14/08 | bank reconciliation | 0.20 |
| 5/03/08 | Prepare Trustee's Final Report | 2.00 |

TOTAL HOURS 25.80

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:
THE ULTIMATE LIVING GROUP, LLC
              Debtor.

Case No. 04-12990/MFW

### ORDER OF DISTRIBUTION

AND NOW, this _____ day of _____, 2008, the Trustee, <u>Alfred T. Giuliano, Chapter 7 Trustee</u>, is hereby ordered and directed to (i) distribute to the parties in interest listed in the attached Distribution Schedule(s), estate monies in the amounts indicated in such Schedule(s), within ten (10) days after the appeal period for this order expires, and (ii) transmit to the United States Trustee, within one hundred twenty (120) days after the appeal period for this order expires, statements for all estate deposit or investment accounts indicating zero balances and all cancelled checks corresponding to disbursements of estate funds as shown in the Trustee's Final Report and Account.

_____
Honorable Mary F. Walrath
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:
THE ULTIMATE LIVING GROUP, LLC
                    Debtor.                  Case No. 04-12990/MFW

## ORDER AWARDING TRUSTEE'S COMPENSATION AND EXPENSES

        AND NOW,  this _____ day of _____, 2008, upon consideration of the foregoing application for compensation and after notice as prescribed by Bankruptcy Rule 2002 to all parties in interest, it is ORDERED, that the sum of $5,917.23 is reasonable compensation for the services in this case by Alfred T. Giuliano, Chapter 7 Trustee, trustee; that such sum does not exceed the limitations prescribed by Section 326 of the Bankruptcy Code, that $187.67 is reasonable for actual and necessary expenses advanced by the trustee; and that such sums are awarded to the trustee.

                                By the Court,

                                _____

                                Honorable Mary F. Walrath
                                United States Bankruptcy Judge